## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| RICHARD PLACKO, CINDY PLACKO, and JOSHUA PLACKO, Individually And On Behalf Of All Others Similarly Situated, | Case No.: |
| Plaintiffs, | **JURY TRIAL DEMANDED** |
| v. | |
| THE UNIVERSITY OF ILLINOIS and BOARD OF TRUSTEES OF THE UNIVERSITY OF ILLINOIS, | |
| Defendants. | |

## COMPLAINT

Plaintiffs Richard Placko, Cindy Placko, and Joshua Placko ("Plaintiffs"), allege on personal knowledge against Defendants University of Illinois and the Board of Trustees of the University of Illinois ("Defendants") as follows:

## NATURE OF THE CASE

1.      This is an action against Defendants for breach of contract, unjust enrichment, and conversion.

2.      Specifically, as set forth more fully below, Plaintiffs and the putative Class members contracted with Defendants for certain services and paid for those services in the form of tuition, room and board, and other fees.  As a result of limitations Defendants have imposed, Defendants has not delivered the services that Plaintiffs and the putative Class contracted and paid for.

3.      Alternatively, Defendants were unjustly enriched based upon monies received from Plaintiffs and putative Class members.

4.     Alternatively, Defendants converted property belonging to Plaintiffs and putative Class members.

5.     As a result, Plaintiffs and the putative Class are entitled to a refund on tuition, room and board, and fees paid for services, facilities, access and/or opportunities not delivered.

## JURISDICTION AND VENUE

6.     This Court has jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because at least one class member is of diverse citizenship from one Defendant, there are more than 100 Class members, and the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs.

7.     This Court has personal jurisdiction over Defendants because Defendants conduct business in Illinois and have sufficient minimum contacts with Illinois.

8.     Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District. Specifically, all monies paid for tuition, room and board, and other fees that is the subject of this action were paid in this District.

## PARTIES

9.     Plaintiff Joshua Placko is a student at The University of Illinois who attend the Defendants' institution during the Spring 2020 semester.

10.     Plaintiffs Richard Placko and Cindy Placko are the parents of Plaintiff Joshua Placko and are citizens and residents of Illinois. Plaintiffs Richard Placko and Cindy Placko were in good financial standing at Defendants' institution having paid in whole or in combination tuition, fees, and costs assessed and demanded by Defendants for the Spring 2020 semester.

11.     Defendant University of Illinois is a public university with multiple campuses located in the state of Illinois.

12.     Defendant, the Board of Trustees of the University of Illinois, is a body corporate authorized to sue and be sued on behalf of the University of Illinois with respect to its responsibilities governing the University.

13.     The University of Illinois and the Board of Trustees of the University of Illinois are collectively referred to herein as "Defendants."

## FACTS

14.     The University of Illinois and U of I Foundation has a combined active endowment of $2.82 billion as of June 30, 2019 and raised $462.9 million in its fiscal year 2019 fundraising campaign.

15.     As of May 11, 2020, the University of Illinois has received $ 15,724,089 in Cares Act funding.

16.     Tuition at Defendants' institution for the 2019-2020 academic year starts at $12,036 for an in-state resident, starts at $29,178 for an out-of-state resident, and starts at $30,052 for an international student.  These rates may be higher depending on each student's major. Room and board costs (which includes a dining plan) at Defendants' institution for the year were approximately $15,000.

17.     Plaintiff Joshua Placko was enrolled as a full-time student for the Spring 2020 semester at Defendant's institution.

18.     As a precondition for enrollment, Plaintiffs were required to and did pay tuition, as did members of the putative Class.

19.     There are hundreds, if not thousands, of institutions of higher learning in this country.

20.     Many institutions of higher learning offer curriculum and instruction that is offered on a remote basis through online learning which do not provide for physical attendance by the students.

21.     Defendants' institution offers in-person, hands on curriculum.

22.     Plaintiff Joshua Placko and members of the putative Class did not choose to attend another institution of higher learning, but instead chose to attend Defendants' institution and enroll on an in-person basis at a significantly high tuition.

23.     The tuition and fees for in-person instruction at Defendants' institution are higher than tuition fees for online institutions because such costs cover not just the academic instruction, but encompass an entirely different experience which includes, but is not limited to:

(a)     Face to face interaction with professors, mentors, and peers;

(b)     Access to facilities such as computer labs, study rooms, laboratories, and libraries;

(c)     Student governance and student unions;

(d)     Extra-curricular activities, groups, and intramurals;

(e)     Student art, cultures, and other activities;

(f)     Social development and independence;

(g)     Hands on learning and experimentation; and

(h)     Networking and mentorship opportunities.

24.     Plaintiff Joshua Placko enrolled at Defendants' institution to earn a degree that included the receipt of taking courses at the campus with live teacher interaction.

25.     Defendants use an educational calendar of two semesters, fall and spring.  The Spring 2020 semester ran from January 21, 2020 through May 6, 2020, plus a period for final exams.

26.     In addition to the price of tuition and fees, Defendants charged and required payment of additional amounts for on-campus meals and campus housing.  Defendants charged between $2,192 and $6,202 for the 2019-2020 academic year as its meal plans only rates.

27.     On March 11, 2020, Defendants announced that all classes were moving to "alternative course delivery" (i.e., online) after Spring Break.

28.     Spring Break occurred on March 14, 2020 through March 22, 2020.

29.     On March 16, 2020, Defendants announced that it was suspending face-to-face instruction for the rest of the Spring 2020 semester.  Defendants also announced it intended to resume instruction using "alternative delivery methods" beginning Monday, March 23, 2020.

30.     On March 16, 2020, Defendants also announced it was requiring all students who could safely do so, to return to their permanent home address to take their classes for the rest of the semester.  No "move out by" date was included in this announcement.

31.     On or about March 17, 2020, Defendants announced that it had cancelled its graduation ceremonies previously scheduled for May 16, 2020 and instead would be mailing diplomas to graduates.

32.     On March 20, 2020, Defendants announced that all students living on campus needed to vacate campus by March 21, 2020 at 2:00 p.m.

33.     On March 24, 2020, Defendants announced that some courses would be switched to "pass/no pass" (also referred to as "PP/NP") grading rather than standard course grading (A/B/C/D/F).  As announced, for those courses switched to "pass/no pass" grading by Defendants, there was no option for Plaintiff Joshua Placko or other students at the University of Illinois to select standard course grading.

34. As described in the Academic Policy Modifications – Spring 2020 from the Office of the Provost, "[c]ourses assessed as PP/NP will not affect student GPA. This could be detrimental to students who were expecting to earn a high grade in the course. Programs with licensure requirements might be affected by PP/NP grading." This announcement also states: "Although we have indications that external stakeholders (employers, graduate schools) will not penalize students for PP/NP, we cannot guarantee that this will be universally true."

35. Defendants suspended or restricted in-person on-campus activities.

36. Although Defendants offered some level of academic instruction via online classes, Plaintiff Joshua Placko and members of the putative Class were deprived of the benefits of on-campus learning as set forth more fully herein.

37. Moreover, the value of any degree issued on the basis of online or pass/fail classes will be diminished for the rest of Plaintiff's life.

38. In their April 10, 2020 communication, Defendants discussed certain billing adjustments already in process related to University Housing (including dining), and certain downward adjustments to Student Service and Campus Transportation fees to reflect the loss of access. In this communication, Defendants admit that some campus fees are not being adjusted.

39. Despite Defendants' cancellation of live in-person instruction, its eviction of students from campus facilities for the remainder of the Spring 2020 semester, and the cancellation of all campus activities, Defendants have not offered adequate refunds of tuition, room and board, and fees paid to cover the cost of on-campus services that were no longer provided to students.

40. To date, Defendants have failed and continue to fail to refund any portion of Plaintiffs' and the putative Class members' Spring 2020 semester tuition payment.

41. Moreover, Plaintiff Joshua Placko and members of the putative Class were deprived of fully utilizing services for which they already paid, including, but not limited to, access to campus facilities and other opportunities.

42. To date, Defendants have failed to adequately and properly refund various fees to Plaintiffs and the putative Class members for university services which Defendants failed to provide as previously agreed upon.

43. To date, Defendants have failed to adequately and properly refund room and board payments made by the putative Class members for services which Defendants failed to provide as previously agreed upon.

## CLASS REPRESENTATION ALLEGATIONS

44. Plaintiffs bring this action on behalf of themselves and for a class of persons defined as:

**The Tuition Class:**

All people who paid tuition for or on behalf of students enrolled in classes at the University for the Spring 2020 semester but were denied live in-person instruction and forced to use online distance learning platforms for the latter portion of that semester.

**The Fees Class:**

All people who paid fees for or on behalf of students enrolled in classes at the University for the Spring 2020 semester but were denied access to the items for which the fees were paid.

**Room and Board Class:**

All people who paid the costs of room and board (housing and meals) for students enrolled in classes at the University for the Spring 2020 semester who moved out of their on-campus housing prior to the completion of that semester because of the University's policies and announcements.

45.     Excluded from the Classes are The Board of Trustees of the University of Illinois, and any of their respective members, affiliates, parents, subsidiaries, officers, directors, employees, successors, or assigns; and the judicial officers, and their immediate family members, and Court staff assigned to this case.  Plaintiffs reserve the right to modify or amend the Class definitions, as appropriate, during the course of this litigation.

46.     Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs and members of the Classes can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

47.     This action has been brought and may be properly maintained on behalf of the Classes proposed herein under the laws of the State of Illinois.

48.     Defendants have acted or refused to act on grounds generally applicable to Plaintiffs and the other Class members, thereby making appropriate final injunctive relief and declaratory relief, as described herein, with respect to the Class members as a whole.

**<u>Numerosity</u>**

49.     The members of the Class are so numerous and geographically dispersed that individual joinder of all Class members is impracticable.  Plaintiffs are informed and believe that there are thousands of members of the Class and includes all students who enrolled at any school or department of Defendant for the 2020 spring semester, the precise number being unknown to Plaintiffs, but such number being ascertainable from Defendants' records.  Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include the use of Defendants' own student records, U.S. mail, electronic mail, internet postings, and/or published notice.

**Commonality and Predominance**

50.     This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, without limitation:

(a)     Whether Defendants engaged in the conduct alleged herein;

(b)     Whether there is a difference in value between online distance learning and live in-person instruction;

(c)     Whether Defendants breached their contracts with Plaintiffs and the other members of the Tuition Class by retaining the portion of their tuition representing the difference between the value of online distance learning and live in-person instruction;

(d)     Whether Defendants were unjustly enriched by retaining tuition payments of Plaintiffs and the Tuition Class representing the difference between the value of online distance learning and live in-person instruction;

(e)     Whether Defendants breached their contracts with Plaintiffs and the other members of the Fees Class by retaining fees without providing the services the fees were intended to cover;

(f)     Whether Defendants were unjustly enriched by retaining fees of Plaintiffs and the other members of the Fees Class without providing the services the fees were intended to cover;

(g)     Whether Defendants breached their contracts with members of Plaintiffs and the Room and Board Class by retaining fees without providing the services the fees were intended to cover;

(h)     Whether Defendants were unjustly enriched by retaining fees of Plaintiffs and members of the Room and Board Class without providing the services the fees were intended to cover;

(i)     Whether Defendants committed conversion as detailed above against Plaintiffs and the other members of the Tuition Class;

(j)     Whether Defendants committed conversion as detailed above against Plaintiffs and the other members of the Fees Class;

(k)     Whether Defendants committed conversion as detailed above against Plaintiffs and members of the Room and Board Class;

(l)     Whether certification of any or all of the classes proposed herein is appropriate;

(m)     Whether Class members are entitled to declaratory, equitable, or injunctive relief, and/or other relief; and

(n)     The amount and nature of relief to be awarded to Plaintiffs and the other Class members.

**Typicality**

51.     Plaintiffs' claims are typical of the other Class member's claims because, among other things, all Class members were similarly situated and were comparably injured through Defendants' wrongful conduct as set forth herein.

**Adequacy**

52.     Plaintiffs are adequate Class representatives because their interests do not conflict with the interests of other members of the Class they seek to represent.  Plaintiffs have retained counsel competent and experienced in complex litigation; and Plaintiffs intend to prosecute the

action vigorously. The Class's interests will be fairly and adequately protected by Plaintiffs and their counsel.

**<u>Superiority</u>**

53.     A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiffs and other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendants, so it would be impracticable for members of the Class to individually seek redress for Defendants' wrongful conduct.

54.     Even if Class members could afford individual litigation, the Court system likely could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, comprehensive supervision by a single court, and finality of the litigation.

55.     The prosecution of separate actions by or against individual members of the Class would create a risk of inconsistent or varying adjudications that would confront Defendants with incompatible standards of conduct.

56.     The dollar amount of the individual claims is insufficient to support separate actions; thus, a multitude of potential claimants have small potential damages that require aggregation in order to be pursued.

57.     This lawsuit is manageable as a class action because the proofs are essentially the same for all members of the Class on all of the principal issues.

58.     Defendants' conduct was the same as to all members of the Class.

59.     The Class members do not have a significant interest in controlling the prosecution of separate actions involving the subject matter of this litigation, especially because the individual claims are too small individually to warrant litigating their claims on an individual basis.

## FOR A FIRST COLLECTIVE CAUSE OF ACTION
## BREACH OF CONTRACT

60.     Plaintiffs bring this count on behalf of the Tuition Class.

61.     Plaintiffs and the Tuition Class entered into contracts with Defendants which provided that Plaintiffs and other members of the Tuition Class would pay tuition for or on behalf of students and, in exchange, Defendants would provide live in-person instruction in a physical classroom.

62.     The terms of this contract were set forth by Defendants through their website, academic catalogs, student handbooks, marketing materials and other circulars, bulletins, and publications.

63.     Defendants' website and recruitment brochures are the primary means through which Defendants target prospective new students and attempt to influence such students to accept Defendant's offer to attend its University as opposed to other institutions of higher learning.

64.     These publications form the basis of the bargain on which prospective students agree to accept Defendants' offer and enroll in the University.

65.     Through these publications, Defendants market and enroll students primarily in two separate and distinct products; (1) on-campus, and (2) online.

66.     Defendants specifically market certain classes and degree programs as being offered on a fully online basis.

67. Indeed, Defendants dedicate an entire section of their website to these programs, known as "Illinois Online" which can be accessed at https://online.illinois.edu/why-illinois-online.

68. Conversely, Defendants' publications with respect to non-online classes are full of references to the on-campus experience, including numerous references to student activities; campus amenities; arts and culture; athletics; and the like.

69. Upon information and belief, there were no references or disclaimers in any of Defendants' websites, circulars, bulletins, publications, brochures, or other advertisements that even referenced the possibility of in-person classes being changed to fully online classes at Defendants' discretion or for any other reason whatsoever after the start of a given term.

70. Defendants further emphasized the distinction between in-person and online class offerings through its academic catalogs and online course listings.

71. Each of Defendants' academic programs is listed separately on the University's Office of the Registrar website with the specific tuition and fees charged for the specific program.

72. The website relating to areas of study is found at http://catalog.illinois.edu/undergraduate/. The websites relating to tuition and fees is found at https://registrar.illinois.edu/tuition-fees/tuition-fee-rates/ug-tuition-rates-2021/.

73. Students in many of Defendants' schools and programs were subject to personal attendance requirements as set forth in various departmental policies and handbooks, evidencing Defendants' requirement and the student's acceptance of the requirement that such students physically attend such classes on campus. This policy includes:

> If, after receiving a notice …, a student's attendance continues to be irregular, the instructor may report this fact to the student's college dean. The dean of the student's college, in consultation with the instructor, may determine that the student's attendance has become so irregular that the student's scholarship is likely to be severely impaired. The dean may require the student to withdraw from the course with a grade of Withdrawal or Failure

74.     A comparison of on-campus education to online learning was completed in a June 9, 2017 Brookings Institute study entitled "Promises and pitfalls of online education"[1].  This study used data from DeVry University including over 230,000 students enrolled in 168,000 sections of more than 750 different courses.   This study compared in-person versus online learning.   As represented in this study, "[e]ach DeVry course is offered both online and in-person, and each student enrolls in either an online section or an in-person section. Online and in-person sections are identical in most ways: both follow the same syllabus and use the same textbook; class sizes are approximately the same; both use the same assignments, quizzes, tests, and grading rubrics." The findings from this study include:

a.   ["T]aking a course online reduces student grades by 0.44 points on the traditional four-point grading scale, approximately a 0.33 standard deviation decline relative to taking a course in-person…"

b.   "[S]tudents taking the course in-person earned roughly a B- grade (2.8) on average while if they had taken it online, they would have earned a C (2.4)."

c.   '[T]aking a course online reduces a student's GPA the following term by 0.15 points; and, if we look only at the next term GPA for courses in the same subject area or courses for which the course in question is a pre-requisite, we find larger drops of 0.42 points and 0.32 points respectively…."

d.   "[T]aking a course online, instead of in person, increases the probability that a student will drop out of school."

---

[1] See https://www.brookings.edu/research/promises-and-pitfalls-of-online-education/

14

75.     In conclusion, this study states, "[t]hese analyses provide evidence that students in online courses perform substantially worse than students in traditional in-person courses and that experience in these online courses impact performance in future classes and their likelihood of dropping out of college as well."

76.     A January 2019 study entitled "Does Online Education Live Up to its Promise?  A Look at the Evidence and Implications for Federal Policy"[2] found a review of the evidence demonstrates that "[a] wide range of audiences and stakeholders—including faculty and academic leaders, employers and the general public—are skeptical about the quality and value of online education, which they view as inferior to face-to-face education."

77.     That Defendants offered to provide, and members of the Tuition Class expected to receive, live in-person instruction is further evidenced by the parties' prior course of conduct.

78.     Those classes for which students expected to receive in-person instruction began the semester by offering in-person instruction.

79.     Each day for the weeks and months leading up to the cancellation of in-person classes, students attended physical classrooms to receive in-person instruction, and Defendants provided such in-person instruction.

80.     Each day for the weeks and months prior to announced closures students had access to the full campus.

---

[2] Authored by Spiros Protopsaltis, an Associate Professor and Director of the Center for Education Policy and Evaluation at George Mason University's College of Education and Human Development and served as a deputy assistant secretary for higher education and student financial aid at the U.S. Department of Education during the Obama administration, and Sandy Baum, a fellow in the Center on Education Data and Policy at the Urban Institute and professor emerita of economics at Skidmore College.  See http://mason.gmu.edu/~sprotops/OnlineEd.pdf

81.     Accordingly, it is clear that Defendants offered to provide live in-person education and that members of the Tuition Class accepted that offer by paying tuition and attending classes in the Spring 2020 semester.

82.     Based on this mutual assent, Plaintiffs and other members of the Tuition Class fulfilled their end of the bargain when they paid tuition for the Spring 2020 semester, either by paying out-of-pocket or by using student loan financing, or otherwise.

83.     However, Defendants breached the contract with Plaintiffs and the Tuition Class by moving all classes for the Spring 2020 semester to online distance learning platforms and restricting the on-campus experience without reducing or refunding tuition accordingly.

84.     Rather, it is clear from the facts and circumstances that Defendants offered two separate and distinct products, one being live, in-person education, with its ancillary and related services and the other being online distance education.

85.     Plaintiffs and members of the Tuition Class accepted Defendants' offer for live in-person education and paid valuable consideration in exchange.

86.     However, after accepting such consideration from Plaintiffs and the Tuition Class, Defendants provided an entirely different product, which deprived Plaintiffs and the Tuition Class of the benefit of the bargain for which they had already paid.

87.     Defendants retained tuition monies paid by Plaintiffs and other members of the Tuition Class, without providing them the full benefit of their bargain.

88.     Plaintiffs and other members of the Tuition Class have suffered damage as a direct and proximate result of Defendants' breach amounting to the difference in the fair market value of the services and access for which they contracted and the services and access which they actually received.

16

89.     As a direct and proximate result of Defendants' breach, Plaintiffs and the Tuition Class are entitled to damages, to be decided by the trier of fact in this action.

## FOR A SECOND COLLECTIVE CAUSE OF ACTION
## UNJUST ENRICHMENT

90.     Plaintiffs bring this count on behalf of the Tuition Class.

91.     This claim is pled in the alternative to, and to the extent it is determined a contract does not exist or otherwise apply to, the contract-based claim set forth in the First Cause of Action above.

92.     Plaintiffs and other members of the Tuition Class paid substantial tuition for live in-person instruction in physical classrooms on a physical campus.

93.     Plaintiffs and other members of the Tuition Class conferred a benefit on Defendant when they paid this tuition.

94.     Defendants have realized this benefit by accepting such payment.

95.     However, Plaintiffs and members of the Tuition Class did not receive the full benefit of their bargain.

96.     Instead, Plaintiffs and members of the Tuition Class conferred this benefit on Defendants in expectation of receiving one product, that being live in-person instruction in a physical classroom along with the on-campus experience of campus life as described more fully above, but were provided with a completely different product carrying a different fair market value.

97.     Defendants have retained this benefit, even though Defendants failed to provide the services for which the tuition was collected, making Defendants' retention unjust under the circumstances.

98.     Equity and good conscience require that Defendants return a portion of the monies paid in tuition to Plaintiffs and other members of the Tuition Class.

## FOR A THIRD COLLECTIVE CAUSE OF ACTION
## BREACH OF CONTRACT

99.     Plaintiffs bring this count on behalf of the Fees Class.

100.    In addition to tuition, Defendants charge a number of mandatory fees.

101.    In publications and, particularly on the website, Defendants specifically describe the nature and purpose of each fee.

102.    Some fees apply broadly to all or certain groups of students, while other fees are program or course based.

103.     The monies Plaintiffs and members of the Fees Class paid towards these fees were intended by both the students and Defendants to cover the services for which the fees were described and billed.

104.    In accepting these terms and paying these fees, there was formed a contract between Plaintiffs, including the Fees Class, and Defendants, which provided that Plaintiffs and other members of the Fees Class would pay these fees for or on behalf of themselves and, in exchange, Defendants would provide the services related to those fees, as advertised.

105.    Plaintiffs and other members of the Fees Class fulfilled their end of the bargain when they paid these fees for the Spring 2020 semester, either by paying out-of-pocket or by using student loan financing, or otherwise.

106.    However, Defendants breached the contract with Plaintiffs and the Fees Class by moving all classes for the Spring 2020 semester to online distance learning platforms, constructively evicting students from campus, closing most campus buildings and facilities, and cancelling most student activities.

18

107.     Defendants have acknowledged such breach and have already refunded or offered to refund some of these fees.

108.     However, such refunds are arbitrary and wholly insufficient.

109.     However, Plaintiffs received a refund for only some of the fees paid.

110.     Only through discovery and trial can the Court examine the contractual promises made by Defendants and make a fair determination on the extent of the breach.

111.     By retaining fees paid by Plaintiffs and other members of the Fees Class, without providing them the full benefit of their bargain, Defendants have not performed the contract.

112.     Plaintiffs and other members of the Fees Class have suffered damage as a direct and proximate result of Defendants' breach, namely being deprived of the value of the benefits and services the fees were intended to cover.

113.     As a direct and proximate result of Defendants' breach, Plaintiffs and the Fees Class are legally and equitably entitled to damages, to be decided by the trier of fact in this action.

## FOR A FOURTH COLLECTIVE CAUSE OF ACTION
## UNJUST ENRICHMENT

114.     Plaintiffs bring this count on behalf of the Fees Class.

115.     This claim is pled in the alternative to, and to the extent it is determined a contract does not exist or otherwise apply to, the contract-based claim set forth in the Third Cause of Action above.

116.     Defendants have received a benefit at the expense of Plaintiffs and other members of the Fees Class to which it is not entitled.

117.     Plaintiffs and other members of the Fees Class paid substantial student fees for on campus benefits, access and services and did not receive the full benefit of the bargain.

118.     Plaintiffs and other members of the Fees Class conferred this benefit on Defendants when they paid the fees.

119.     Defendants realized this benefit by accepting such payment.

120.     Defendants have retained this benefit, even though Defendants have failed to provide the services for which the fees were collected, making Defendants' retention unjust under the circumstances.

121.     Equity and good conscience require that Defendants return a pro-rata portion of the monies paid in fees to Plaintiffs and other members of the Fees Class.

**FOR A FIFTH COLLECTIVE CAUSE OF ACTION**
**BREACH OF CONTRACT**

122.     Plaintiffs bring this count on behalf of the Room and Board Class.

123.     Plaintiffs and other members of the Room and Board Class entered into contracts in the form of agreements with the University, that provided that Plaintiffs and other members of the Room and Board Class would pay monies and, in exchange, the University would provide housing in its residence halls and other campus affiliated-housing and a meal plan.

124.     Plaintiffs and other members of the Room and Board Class fulfilled their end of the bargain when they paid monies due and owing for their residence hall or other housing for the semester and a meal plan. Plaintiffs and other members of the Room and Board Class were not provided housing for the entire semester or the agreed upon meal plan; accordingly, Plaintiffs and other members of the Room and Board Class are entitled to a refund.

125.     Only through discovery and trial can the Court examine the contractual promises made by Defendants and make a fair determination on the extent of the breach.

20

126.     By retaining Room and Board fees paid by Plaintiffs and other members of the Room and Board Class, without providing them the full benefit of their bargain, Defendants have not performed the contract.

127.     Plaintiffs and other members of the Room and Board Class have suffered damage as a direct and proximate result of Defendants' breach, namely being deprived of the value of the benefits and services the Room and Board fees were intended to cover.

128.     As a direct and proximate result of Defendants' breach, Plaintiffs and the Room and Board Class are legally and equitably entitled to damages, to be decided by the trier of fact in this action.

## FOR A SIXTH COLLECTIVE CAUSE OF ACTION
## UNJUST ENRICHMENT

129.     Plaintiffs bring this count on behalf of the Room and Board Class, and in the alternative to the breach of contract claim brought on behalf of the other members of the Room and Board Class.

130.     Defendants have received a benefit to which it is not entitled at the expense of Plaintiffs and other members of the Room and Board Class. Plaintiffs and other members of the Room and Board Class paid for housing and a meal plan and did not receive the full benefit of their bargain.

131.     Accordingly, Defendants should return the unused monies paid for on-campus housing and meal plan for the Spring 2020 semester by Plaintiffs and other members of the Room and Board Class. Equity demands the return of the prorated, unused amounts paid by Plaintiffs and other members of the Room and Board Class.

132.     Defendants have been unjustly enriched by retaining the monies paid by Plaintiffs and other members of the Room and Board Class for residence hall housing for the semester while not providing the housing for which those monies were paid.

133.     Equity and good conscience require that Defendants return to Plaintiffs and the other members of the Room and Board Class a pro-rata portion of the monies paid by Plaintiffs and other members of the Room and Board Class for their housing expenses.

## FOR A SEVENTH COLLECTIVE CAUSE OF ACTION
## CONVERSION

134.     Plaintiffs bring this count on behalf of the Tuition Class.

135.     The two key elements of conversion are (a) Plaintiffs' legal ownership or an immediate superior right of possession to a specific identifiable thing, and (b) Defendants' unauthorized dominion over the thing in question or interference with it, to the exclusion of Plaintiffs' right.

136.     Plaintiffs, and members of the Tuition Class, have an identifiable legal ownership to the right and services of an in-person, on-campus educational experience and paid tuition funds for the same.

137.     As set forth above, Defendants have not provided those services or access, to the exclusion of Plaintiffs' and other members of the Tuition Class's rights.

138.     As set forth above, Plaintiffs have not, to date, received from Defendants a proper reimbursement for tuition paid to Defendants for the Spring 2020 semester.

139.     Defendants have received and retained possession of Plaintiffs' and other Tuition Class members' full payments for tuition for the Spring 2020 semester.

140. Defendants' continued possession of the full payments for Spring 2020 semester tuition is adverse and in derogation of Plaintiffs' and other Tuition Class members' entitlement to such funds.

141. Defendants refuse to remit to Plaintiffs and the Tuition Class reimbursement for tuition paid for the Spring 2020 semester.

142. Defendants have therefore converted and continue to convert Plaintiffs' and other Tuition Class members' Spring 2020 semester tuition.

### FOR AN EIGHTH COLLECTIVE CAUSE OF ACTION
### CONVERSION

143. Plaintiffs bring this count on behalf of the Fees Class.

144. The two key elements of conversion are (a) Plaintiffs' legal ownership or an immediate superior right of possession to a specific identifiable thing, and (b) Defendants' unauthorized dominion over the thing in question or interference with it, to the exclusion of Plaintiffs' right.

145. Plaintiffs, and members of the Fees Class, have an identifiable legal ownership to the right and services of an in-person, on-campus educational experience and paid fees for the same.

146. As set forth above, Defendants have not provided those services or access, to the exclusion of Plaintiffs' and other members of the Fee Class's rights.

147. As set forth above, Plaintiffs and other Fees Class members have not, to date, received from Defendants a proper reimbursement for fees paid to Defendants for the Spring 2020 semester.

148. Defendants have received and retained possession of Plaintiffs' and other Fees Class members' payments for fees for the Spring 2020 semester.

149.     Defendants' continued possession of the payments for Spring 2020 semester fees is adverse and in derogation of Plaintiffs' and other Fees Class members' entitlement to such funds.

150.     Defendants refuse to remit to Plaintiffs and other Fees Class members reimbursement for some fees paid for the Spring 2020 semester.

151.     Defendants have therefore converted and continue to convert Plaintiffs' and other Fees Class members' Spring 2020 semester fees.

## FOR A NINTH COLLECTIVE CAUSE OF ACTION
## CONVERSION

152.     Plaintiffs bring this count on behalf of the Room and Board Class.

153.     The two key elements of conversion are (a) Plaintiffs' and the Room and Board Class members' legal ownership or an immediate superior right of possession to a specific identifiable thing, and (b) Defendants' unauthorized dominion over the thing in question or interference with it, to the exclusion of Room and Board Class members' right.

154.     Plaintiffs and the Room and Board Class has an identifiable legal ownership to the right and services of room and board (including a meal plan) supporting an in-person, on-campus educational experience and paid fees for the same.

155.     As set forth above, Defendants have not provided those services or access, to the exclusion of Plaintiffs and other members of the Room and Board Class's rights.

156.     As set forth above, Plaintiffs and members of the Room and Board Class have not, to date, received from Defendants a proper reimbursement for fees paid to Defendants for the Spring 2020 semester.

157.     Defendants have received and retained possession of Plaintiffs and the Room and Board Class' payments for those fees for the Spring 2020 semester.

158.    Defendants' continued possession of the payments for Spring 2020 semester fees is adverse and in derogation of the Room and Board Class' entitlement to such funds.

159.    Defendants refuse to remit to Plaintiffs and the Room and Board Class proper reimbursement for room and board (including a meal plan) fees paid for the Spring 2020 semester.

160.    Defendants have therefore converted and continue to convert the Room and Board Class' Spring 2020 semester payments.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually and on behalf of members of the Classes, pray for judgment in their favor and against Defendants as follows:

A.    Certifying the Classes as proposed herein, designating Plaintiffs as Class representatives, and appointing undersigned counsel as Class Counsel;

B.    Declaring that Defendants are financially responsible for notifying the Class members of the pendency of this action;

C.    Declaring that Defendants have wrongfully kept monies paid for tuition and fees;

D.    Requiring that Defendants disgorge amounts wrongfully obtained for tuition and fees;

E.    Awarding injunctive relief as permitted by law or equity, including enjoining Defendants from retaining the pro-rated, unused monies paid for tuition and fees;

F.    Awarding Plaintiffs' reasonable attorney's fees, costs and expenses, as permitted by law;

G.    Awarding pre and post judgment interest on any amounts awarded, as permitted by law; and

H.      Awarding such other and further relief as may be just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiffs demand a trial by jury on all issues so triable.


Dated: June 12, 2020

*/s/ Katrina Carroll*
Katrina Carroll
Kyle A. Shamberg
Nicholas R. Lange
**CARLSON LYNCH LLP**
111 West Washington Street, Suite 1240
Chicago, Illinois 60602
312.750.1265
kcarroll@carlsonlynch.com
kshamberg@carlsonlynch.com
nlange@carlsonlynch.com

Edward Ciolko
James P. McGraw
**CARLSON LYNCH LLP**
1133 Penn Avenue
5th Floor
Pittsburgh, PA 15222
Office:    412.322.9243
Fax:    412.231.0246
eciolko@carlsonlynch.com
jmcgraw@carlsonlynch.com

**GAINEY McKENNA & EGLESTON**
Thomas J. McKenna
Gregory M. Egleston
Robert J. Schupler
501 Fifth Avenue, 19th Floor
New York, NY 10017
Tel.: (212) 983-1300
Email: tjmckenna@gme-law.com
Email: gegleston@gme-law.com
Email: rschupler@gme-law.com

***Attorneys for Plaintiffs***

26