UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| RICHARD PLACKO, CINDY PLACKO, and JOSHUA PLACKO, Individually And On Behalf Of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE UNIVERSITY OF ILLINOIS and BOARD OF TRUSTEES OF THE UNIVERSITY OF ILLINOIS,<br><br>Defendants. | Case No. 1:20-cv-03451<br>Hon. Robert W. Gettleman<br>Hon. Mag. Jeffrey I. Cummings |

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS

Defendant the Board of Trustees of the University of Illinois (the "University")[1] respectfully moves this Court, pursuant to Federal Rules of Civil Procedure ("Rule") 12(b)(1) and 12(b)(6), for dismissal of the Complaint ("Compl.") filed by Plaintiffs Richard Placko, Cindy Placko, and Joshua Placko (collectively "Plaintiffs"). In support thereof, the University states:

### INTRODUCTION

Plaintiffs, individually and on behalf of several putative classes, seek refunds of tuition, fees, and room and board costs following the University's necessary transition to remote learning in Spring 2020 to protect the health and safety of students, staff, and faculty in the face of a global pandemic. Plaintiffs do not dispute that this was the only option available, yet contend the

---

[1] Plaintiffs' Complaint erroneously names the University of Illinois and the Board of Trustees of the University of Illinois as separate defendants. The "University of Illinois" is not a separate legal entity; the Board of Trustees of the University of Illinois is the body corporate and politic authorized to sue and be sued. Accordingly, the "University" as used herein should be deemed to refer to the single legal entity representing both named Defendants.

1

ACTIVE 51663364v3

University's actions constitute a breach of contract, unjust enrichment, and conversion. The Court should dismiss Plaintiffs' claims for lack of subject matter jurisdiction and failure to state a claim.

First, under the Eleventh Amendment, sovereign immunity, and state law, Plaintiffs cannot maintain their action against an arm of the State in federal court. Accordingly, the Court should dismiss Plaintiffs' claims for lack of subject matter jurisdiction under Rule 12(b)(1).

Second, each of Plaintiffs' claims is facially deficient. The breach of contract claim does not allege a contract with definite terms, a material breach, or resultant injury. The unjust enrichment claim does not allege improper conduct by the University. The conversion claim does not allege a cognizable property right, an unconditional right to possession, or a demand for possession. Accordingly, each of Plaintiffs' claims should be dismissed under Rule 12(b)(6).

## STATEMENT OF THE FACTS

The University operates campuses around the State with thousands of students enrolled each semester. Compl. ¶ 11. Along with on-campus instruction, the University offers online courses at the same tuition rate as on-campus instruction. *See id.* at ¶¶ 67, 72. The University offers additional services, including room and board, for an added expense. *Id.* at ¶ 26.

The COVID-19 global outbreak caused Governor J.B. Pritzker to declare the State of Illinois a disaster area during, and extending through, the Spring 2020 semester. *See* Fourth Gov. Disaster Procl. (Ex. A)[2]; *see also* Exec. Order No. 30 (Ex. B). The Governor issued executive orders throughout March to protect the public health. *See* Exec. Order Nos. 2, 5 (Group Ex. C). These limitations culminated in a Stay-at-Home order on March 20, closing all but essential businesses and prohibiting all gatherings outside a single household. *See* Exec. Order No. 8 (Ex.

---

[2] Although the Complaint does not mention the pandemic, the Court may take judicial notice of the Governor's actions. *See Hill v. SEIU*, No. 15 CV 10175, 2016 U.S. Dist. LEXIS 62734, at *3 (N.D. Ill. May 12, 2016) ("Matters of public record—for example, statutes, regulations, and executive orders—are subject to judicial notice and may be considered even if not mentioned in the complaint.") (citing *e.g.*, *White v. Keely*, 814 F.3d 883, 886 n. 2 (7th Cir. 2016)).

2

D); *see also* Ex. B (extending stay-at-home order). Colleges and universities were permitted to remain open strictly to facilitate distance learning, perform research, and conduct limited essential functions. Ex. D at § 12(j).

In response to the global health crisis and the Governor's orders, the University transitioned to distance learning for all curriculum, modified the Spring 2020 grading system to pass/fail, suspended in-person on-campus activities, and vacated on-campus housing. Compl. at ¶¶ 27, 29, 32, 33, 35, 36. The University also offered refunds for certain fees and room-and-board costs. *Id.* at ¶ 38. Plaintiffs initiated the present case on June 12, 2020, individually and on behalf of three putative classes, seeking additional reimbursements. *See generally id.*

## ARGUMENT

**I.     This Court Lacks Subject Matter Jurisdiction Over Plaintiffs' Claims**

    **A.     Standard for a Rule 12(b)(1) Motion.**

In reviewing a facial challenge to subject matter jurisdiction under Rule 12(b)(1), this Court accepts all well-pleaded facts as true. *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015). As the party invoking federal jurisdiction, Plaintiffs bear the burden of establishing the Court's subject matter jurisdiction. *Bryant v. Compass Grp. USA, Inc.*, 958 F.3d 617, 620 (7th Cir. 2020).

    **B.     The Eleventh Amendment Bars Plaintiffs from Suing the University in Federal Court.**

The University is protected from suit in federal court by the Eleventh Amendment, which "bars actions in federal court against a state, state agencies, or state officials acting in their official capacities." *Ind. Protection & Advocacy Servs. v. Ind. Family & Social Servs. Admin.*, 603 F.3d 365, 370 (7th Cir. 2010) (citing *Edelman v. Jordan*, 415 U.S. 651, 663 (1974)). This protection extends to state universities, which are considered arms of the State. *Cannon v. Univ. of Health Sciences/The Chi. Med. Sch.*, 710 F.2d 351, 356-57 (7th Cir. 1983) ("[S]tate universities are

3

immune to any claim for damages by reason of the Eleventh Amendment."). It applies "'regardless of the nature of the relief sought.'" *Kroll v. Bd. of Trs. of the Univ. of Ill.*, 934 F.2d 904, 907 (7th Cir. 1991) (applying this principle to a claim against the University).

The Eleventh Amendment precludes this Court's jurisdiction over the University. The Board of Trustees of the University of Illinois is the exclusive state entity empowered to sue and be sued under state law. *See* 110 ILCS 305/1; *Shea v. Winnebago Cty. Sheriff's Office*, No. 12-CV-50201, 2014 U.S. Dist. LEXIS 126696, *8 n. 2 (N.D. Ill. Sept. 10, 2014). The University is thus an arm of the State subject to Eleventh Amendment immunity. *See Carmody v. Bd. of Trs. of the Univ. of Ill.*, 893 F.3d 397, 403 (7th Cir. 2018). The fact that Plaintiffs' Complaint purports to seek both damages and equitable relief is of no import; the University has immunity from injunctive and other prospective relief. *See Rittenhouse v. Bd. of Trustees of S. Ill. Univ.*, 628 F. Supp. 2d 887, 893 (S.D. Ill. 2008) (noting state agencies are not subject to suit for injunctive relief in federal court) (citation omitted); *Jordan v. Trainor*, 563 F.2d 873, 875-76 (7th Cir. 1977) (holding money judgment labeled as equitable in nature cannot stand against a state).[3] Consequently, this Court should dismiss Plaintiffs' Complaint in its entirety on Eleventh Amendment grounds.

### C. Under Principles of Sovereign Immunity and State Law, the Illinois Court of Claims Has Exclusive Jurisdiction over Plaintiffs' Contract and Tort Claims.

The University is further immune from liability under the State Lawsuit Immunity Act (the "Immunity Act"), which provides "the State of Illinois shall not be made a defendant or party in any court," except as expressly authorized by Illinois state law. *See* 745 ILCS 5/1. The only exception potentially applicable to certain of Plaintiffs' claims is an authorized action under the Court of Claims Act. *See id.*; *see also Richman v. Sheahan*, 270 F.3d 430, 441 (7th Cir. 2001). The

---

[3] Notably, the alleged injunctive relief that Plaintiffs seek is to enjoin "Defendants from retaining the pro-rated unused monies for tuition and fees." As in *Jordan*, this purported equitable relief is indistinguishable from the monetary damages that Plaintiffs simultaneously seek and is not a viable remedy.

University of Illinois Act likewise provides that claims against the University, through its Board of Trustees, "must be filed in the Court of Claims[.]" 110 ILCS 305/1.

The Court of Claims Act dictates that the State (and by extension, the University) are subject to the "exclusive jurisdiction" of the Court of Claims for both contract and tort claims. 705 ILCS 505/8(b), (d). Plaintiffs bring three counts for breach of contract (I, III and V) and three counts for the tort of conversion (VII, VIII and IX).[4] The Court of Claims is the exclusive judicial body authorized to adjudicate these claims against the University. *See also Joseph Constr. Co. v. Bd. of Trustees of Governors State Unv.*, 2012 IL App (3d) 110379, ¶ 41 (2012) (holding state colleges and universities "are 'the State' for purposes of sovereign immunity and must be sued in the Court of Claims"). This Court should therefore dismiss Plaintiffs' breach of contract and conversion counts for lack of subject matter jurisdiction pursuant to state law.

### D.     Sovereign Immunity Bars Plaintiffs' Unjust Enrichment Claims.

Plaintiffs' counts for unjust enrichment (II, IV & VI) are not contract or tort claims, and therefore are barred entirely by the Immunity Act, leaving no Court with subject matter jurisdiction over these counts. Unjust enrichment is an equitable remedy sounding in restitution. *See Cleary v. Phillip Morris Inc.*, 656 F.3d 511, 516 (7th Cir. 2011) (citation omitted); *Daley v. G'Sell*, 102 Ill. App. 3d 358 (1st Dist. 1981) (citation omitted). The Court of Claims Act contains no provision extending jurisdiction to unjust enrichment claims. *See* 705 ILCS 505/1, *et seq.* As a court of limited jurisdiction, the Court of Claims does not possess "general equitable powers." *Comp. Training Inst. of Chi., LLC v. State Dep't of Veterans' Affairs*, 68 Ill. Ct. Cl. 125, 130-31 (2016). Thus, claims founded in theories of equity do "not fall within any of the [statute's jurisdictional] grants" and cannot be heard by the Court of Claims or this Court. *Id.* at 131 (dismissing unjust

---

[4] Under Illinois law, "a tort for conversion can arise from 'any material alteration in characteristics to chattel.'" *G.M. Sign, Inc. v. Stergo,* 681 F.Supp. 2d 929, 933 (N.D. Ill. 2009).

5

enrichment claims for lack of jurisdiction) (citation omitted). Because the federal, state, and claims courts all lack jurisdiction to hear Plaintiffs' unjust enrichment claims, the University is wholly immune from these counts and they should be dismissed with prejudice.

## II. Plaintiffs' Nine Counts Fails to State a Claim Upon which Relief Can Be Granted.

### A. Standard for a Rule 12(b)(6) Motion.

In reviewing a motion to dismiss under Rule 12(b)(6), this Court accepts all well-pleaded facts as true and draws all reasonable inferences in Plaintiffs' favor. *Ramos v. Ashcroft*, No. 02 C 8266, 2003 U.S. Dist. LEXIS 17426, at *5-6 (Sept. 30, 2003). A complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Facial plausibility exists where the plaintiff pleads facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[A]llegations in the form of legal conclusions are insufficient to survive a Rule 12(b)(6) motion." *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 885 (7th Cir. 2012) (citing *Iqbal*, 556 U.S. at 678). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

### B. Plaintiffs Have Failed to State a Claim for Breach of Contract.

Plaintiffs' breach of contract counts (I, III, and V) are deficient on key elements. To state a claim for breach of contract, a plaintiff must plead: (1) the existence of a valid and enforceable contract; (2) performance by the plaintiff; (3) breach by the defendant; and (4) a resultant injury. *Zirp-Burnham, LLC v. E. Terrell Assocs.*, 356 Ill. App. 3d 590, 600 (1st Dist. 2005). Plaintiffs fail to allege an enforceable contract with definite terms, a material breach, or resultant injury.

#### 1. Plaintiffs Have Failed to Allege a Contract with Definite Terms.

For all three breach of contract counts, Plaintiffs failed to attach to their Complaint the express contract(s) purportedly at issue, serving as one basis for dismissal. *See Bastian v. Wausau*

6

*Homes, Inc.*, 620 F. Supp. 947, 950 (N.D. Ill. Sept. 24, 1985) (indicating a plaintiff's failure to attach contract to complaint is "fatally defective"). Nor have Plaintiffs alleged any reasonably certain contract terms. Plaintiffs must plead facts to support the existence of a valid and enforceable contract, *i.e.*, offer, consideration, and acceptance. *See Academy Chi. Pubs. v. Cheever*, 144 Ill. 2d 24, 29 (1991). "[A]n offer must be so definite as to its material terms or require such definite terms in the acceptance that the promises and performances to be rendered by each party are reasonably certain." *Id.* To meet this standard, the Court must be able to discern what the parties have agreed to do. *Id.* (holding agreement unenforceable where contract terms too indefinite and parties did not share a "common understanding of the essential terms"); *see, e.g., Marmachi v. Bd. of Trs. of the Univ. of Ill.*, 715 Fed. App'x 529, 533 (7th Cir. 2017) (affirming dismissal where plaintiff failed to allege contract terms violated by the University) (citing *Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 603 (7th Cir. 2009) ("A plaintiff may not escape dismissal on a contract claim . . . by stating that he had a contract with the defendant. . . . What was the contract?").

   The Complaint is unclear even as to whether Plaintiffs allege one contract or multiple contracts governing tuition, fees, and room and board. Plaintiffs also have not identified what material term(s) in such contract(s) set forth the parties' common understanding relevant to the University's transition to remote learning in response to a global pandemic and executive orders. In *Abrams v. Illinois College of Podiatric Medicine*, the student-plaintiff sought to enforce a purported contract with his college after he was dismissed for poor academic standing. 77 Ill. App. 3d 471, 474 (1st Dist. 1979). The court found no contract existed. *Id.* at 476-77. The terms of the oral statement to provide academic assistance were not "sufficiently definite and certain," *id.* at 476, and the handbook encouraging periodic progress evaluations constituted an "unenforceable expression of intention, hope or desire"—not a contractual offer or promise to

perform. *Id.* at 477. *See also Ross v. Creighton Univ.*, 957 F.2d 410, 417 (7th Cir. 1992) ("To state a claim for breach of contract, the plaintiff must do more than simply allege that the education was not good enough. Instead, he must point to an identifiable contractual promise that the defendant failed to honor."); *Miller v. MacMurray College*, 2011 IL App (4th) 100988-U, ¶49 (rejecting student's breach of contract claim where catalog was "devoid of any contractual offer from the college that it would schedule its classes in the manner [the student] claims").

Plaintiffs' breach of contract counts are similarly vague and insufficient. For the tuition and fees claims (counts I and III), Plaintiffs rely on an amalgamation of materials to assert an ambiguous, undefined contractual right to in-person instruction and an on-campus experience.[5] Yet Plaintiffs fail to identify any specific promise within these materials that the University breached. Plaintiffs have not pled facts to express a common understanding binding the University to provide in-person instruction and the "on-campus experience" without limitation. The materials on which Plaintiffs rely amount to nothing more than an "unenforceable expression of intention, desire or hope" akin to the *Abrams* student handbook. Likewise, Plaintiffs' room and board claim (count V) includes only broad allegations of "contracts in the form of agreements" whereby Plaintiffs would pay the University in exchange for housing and a meal plan. Compl. ¶ 123. Plaintiffs then seek "discovery and trial" for this Court to "examine the contractual promises made by Defendants and make a fair determination on the extent of the breach." *Id*. at ¶ 125. This "threadbare" recital of legal conclusions and conclusory statements is plainly insufficient to state a claim. *Iqbal*, 556 U.S. at 678. Without identifying a plausible contract with sufficiently definite terms to support each of Plaintiffs' counts, Plaintiffs cannot state a claim for breach of contract.

---

[5] *See* Compl. ¶¶ 62 (identifying "website, academic catalogs, student handbooks, marketing materials and other circulars, bulletins, and publications" as basis for contract with Tuition Class), 101 (identifying "publications" and "particularly [] the website" as basis for contract with Fees Class).

8

### 2. Plaintiffs Cannot Plead a Material Breach.

Plaintiffs' breach of contract counts also fall short on the element of material breach. Plaintiffs merely assert in conclusory terms that the absence of live in-person education and on-campus activities and housing constituted an unspecified breach of indefinite contract terms and deprived Plaintiffs of the "benefit of their bargain," without identifying the terms breached or the facts or circumstances constituting the alleged breach. *See* Compl. at ¶¶ 83-87, 106-11, 125-26. These allegations are facially insufficient to state a plausible breach of contract claim.

Moreover, insofar as the breach of contract claims aim to second-guess the University's transition to remote learning in response to a global pandemic and mandatory executive orders, the pleading defects are incurable as a matter of law. The U.S. Supreme Court has recognized the need for deference to universities, giving credence to their professional judgment on academic decisions, including how lessons are taught. *See Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 225-26 n. 12 (1985) (citing *Sweezy v. New Hampshire*, 354 U.S. 234 (1957)). Universities are afforded "a generous measure of independence and autonomy with respect to the establishment, maintenance, and enforcement of academic standards." *Bosch v. NorthShore Univ. Health Sys.*, 2019 IL App (1st) 190070, ¶ 32 (Dec. 11, 2019) (finding student's claim could proceed where complaint alleged student's dismissal was based on instructors' fabricated criticisms and charges against student, which "had nothing to do with" the school's academic judgment) (citation and internal quotations omitted). This discretion stems from the principle that courts "have little business substituting their judgment for that of the educational and academic professionals." *Singletary v. S. Ill. Univ. (Carbondale)*, 62 Ill. Ct. Cl. 198, 199 (2010); *Tanner v. Bd. of Trs. of the Univ. of Ill.*, 121 Ill. App. 3d 139, 144 (4th Dist. 1984) (upholding trial court's determination that the University was not arbitrary and capricious when it did not award degree to plaintiff).

Where a student-school contract does exist, courts treat this relationship differently than

9

typical breach of contract claims, requiring plaintiffs to establish that the contested academic decision was arbitrary, capricious, and made in bad faith. *See, e.g.*, *Seitz-Partridge v. Loyola Univ.*, 409 Ill. App. 3d 76, 82-83 (1st Dist. 2011). Courts will not intervene in academic decisions unless they substantially depart from academic norms in a manner demonstrating a lack of professional judgment. *Bosch*, 2019 IL App (1st) 190070 at ¶ 32. Students have a "heavy burden" to show that a school's decision was made "without any discernable rational basis." *Seitz-Partridge*, 409 Ill. App. 3d at 83; *see also Harris v. Adler Sch. of Prof. Psych.*, 309 Ill. App. 3d 856 (1st Dist. 1999) (granting motion to dismiss where student alleged school arbitrarily and capriciously administered invalid exam to ascertain student's first-year knowledge required to remain in program).

Plaintiffs' breach of contract claims cannot meet this heightened standard. Plaintiffs' conclusory allegation that online learning impacts students' performance, or deprives them of the "benefit of the bargain," does not supply any plausible basis to conclude that the University's actions were arbitrary, capricious, made in bad faith, or amounted to a lack of professional judgment. Indeed, Plaintiffs do not allege how the University could have acted otherwise while complying with executive orders mandating that schools and universities across the State shut down. *See* Ex. D, §§ 5, 11 & 12(j) (permitting individuals in Illinois to leave their homes only to attend to essential business such as seeking healthcare and going to the grocery store, and expressly stating that "educational entities" were among the businesses that were not permitted to operate in person except to facilitate distance learning). Plaintiffs have not alleged anything to the contrary. Consequently, Plaintiffs' first cause of action should be dismissed.

### 3.  Plaintiffs Cannot Plead Resulting Damages.

Plaintiffs have additionally failed to plead resulting damages. The measure of damages for breach of contract places the plaintiff in the position he or she would have been in had the contract been performed or the breach not occurred. *West Bend Mut. Ins. Co. v. Procaccio Painting &*

10

*Drywall Co.*, 794 F.3d 666, 679 (7th Cir. 2015). "Damages must be proved, and not just dreamed." *Mindgames, Inc. v. W. Publ'g Co.*, 218 F.3d 652, 658 (7th Cir. 2000). Damages based on speculation and conjecture cannot carry a claim. *See id.* To be considered speculative, "uncertainty [must] exist[] as to the fact of [the damages'] existence, as opposed to the amount of damages." *Westlake Fin. Grp. v. CDH-Delnor Health Sys.*, 2015 IL App (2d) 140589, ¶¶ 50-52 (Jan. 6, 2015).

Here, Plaintiffs do not allege how they suffered damages at all with respect to the tuition claim (count I). Plaintiffs do not allege that they are in any worse a position financially than they would have been absent the state-mandated school closures. Nor do Plaintiffs allege that they paid tuition for credits they did not receive. Indeed, Plaintiffs agree the University continued to offer online instruction. Rather, the Complaint seeks damages for the purported difference in value between in-person and online instruction by claiming the quality and value of online education is inferior to face-to-face education. Such damages are inherently subjective and speculative. Moreover, the Court is not in a position to evaluate the quality of the education provided or the value of educational methods. *See Lewis E. v. Spagnolo*, 186 Ill. 2d 198, 208-09 (1999) (finding issues of education quality should not be measured or determined by the courts). This Court should decline to review academic decisions regarding the format and delivery of course content or determine the value of teaching methods. *See Waugh v. Morgan Stanley & Co.*, 2012 IL App (1st) 102653, ¶¶ 41-42 ("[I]f a claim requires an analysis of the quality of education, it is a claim for educational malpractice," which is not a recognized cause of action in Illinois); *Miller*, 2011 IL App (4th) 100988-U, ¶ 55 (finding plaintiff did not state a claim based on college curriculum failing to meet plaintiffs' expectations).

While Plaintiffs allege a difference in value for in-person and online instruction, the tuition schedule Plaintiffs cite in their Complaint confirms there is no distinction in cost for credits earned

11

online versus in-person.[6] Nor have Plaintiffs adequately pled that they are in a worse position. Plaintiffs cite a study analyzing student performance for online versus in-person classes at a single university, while also implying that the pass/fail grading modification may impact students' job prospects. Compl. at ¶ 37. This alleged damage is pure conjecture.

Plaintiffs also have not alleged how they were damaged by the fee and room and board claims (counts III and V) in light of Plaintiffs' admission that the University has already refunded or offered to refund portions of these amounts. *See* Compl. at ¶¶ 107, 109. Plaintiffs' conclusory assertion that the refunds given or offered by the University are "arbitrary and wholly insufficient" does not allege a cognizable resulting injury and lacks a plausible factual basis.

### C. Plaintiffs Have Failed to State a Claim for Unjust Enrichment.

The Complaint also fails to allege a claim for unjust enrichment. Unjust enrichment results where the defendant received a benefit to the plaintiff's detriment, and allowing the defendant to retain that benefit would be unjust. *Macon Cty. v. Merscorp, Inc.*, 968 F. Supp. 2d 959, 965-66 (C.D. Ill. Aug. 9, 2013) (citation omitted). Unjust enrichment is "not an independent cause of action" and thus requires "unlawful or improper conduct as defined by law, such as fraud, duress, or undue influence." *E.g.*, *Martis v. Grinnell Mut. Reins. Co.*, 388 Ill. App. 3d 1017, 1025 (3d Dist. 2009); *see also Rustom v. Naser Rustom & N. Star Trust Co.*, No. 17 C 9061, 2019 U.S. Dist. LEXIS 144936, at *21 (N.D. Ill. Aug. 27, 2019) (adopting *Martis* and dismissing unjust enrichment claim). Plaintiffs make no attempt to allege that the University's response to a global pandemic and mandatory executive orders constituted fraud, duress, or undue influence. Moreover, because unjust enrichment claims are not independent causes of action, they must rise or fall with

---

[6] The link referring to the University's online curriculum, *see* Compl. ¶ 67 (https://online.illinois.edu/why-illinois-online), directs the user to the University Registrar website. The Registrar site, *see* Compl. ¶ 72 (https://registrar.illinois.edu/tuition-fees/tuition-fee-rates/ug-tuition-rates-2021/), provides the same tuition rates for both remote and in-person credits. *See United States v. Wood*, 925 F.2d 1580, 1581-82 (7th Cir. 1991) (noting courts may consider documents incorporated by reference in the pleadings when ruling on a 12(b)(6) motion).

other claims predicated on the same misconduct. *Alarm Detection Sys., Inc. v. Orland Fire Protection Dist.,* 194 F.Supp.3d 706 (N.D. Ill. 2016) (citing *Cleary v. Phillip Morris Inc.,* 656 F.3d 511, 517 (7th Cir. 2011)). Here, Plaintiffs have not sufficiently stated any other claim to support unjust enrichment.[7] Counts II, IV, and VI thus fail to state a claim for unjust enrichment.

### D. Plaintiffs Have Failed to State a Claim for Conversion.

Plaintiffs also fail to plead conversion (Counts VII-IX). Conversion requires a plaintiff to allege that she: (1) has a cognizable property right; (2) has an absolute and unconditional right to the immediate possession of that property; (3) made a demand for possession; and (4) that the defendant wrongfully assumed control, dominion, or ownership over the property. *In re Karavidas*, 2013 IL 115767, ¶ 61 (Nov. 15, 2013). Plaintiffs' Complaint fails to satisfy the first three elements.

#### 1. Plaintiffs Have Not Alleged a Cognizable Property Right.

Plaintiffs attempt to assert two property rights: (1) an on-campus experience and related services; and (2) the money paid in exchange for these services.[8] Illinois courts do not recognize either to support a conversion claim. "[N]ot all types of property are subject to being converted." *Id.* at ¶ 65. Generally, the personal property must be tangible or represented by, or connected with, something tangible. *Id.* Services (like in-person instruction) and vague concepts (like an on-campus experience) do not qualify. *See In re Thebus*, 108 Ill. 2d 255, 260 (1985); *see also Film & Tape Works, Inc. v. Junetwenty Film, Inc.*, 368 Ill. App. 3d 462, 475-46 (1st Dist. 2006) (affirming summary judgment for defendant on conversion claim where exchange of goods and services at issue). Consequently, Plaintiffs' alleged property rights in the on-campus experience and related services are beyond the purview of conversion.

---

[7] *See supra*, at section II.B.1-3 (noting failure to state a claim for breach of contract); *see infra*, at section II.D.1-3 (noting failure to state a claim for conversion).
[8] *See* Compl. ¶¶ 136, 145, 154.

13

So too Plaintiffs' property claim to the money paid for these experiences and services fails as a matter of law. "Illinois law limit[s] the circumstances under which a plaintiff [can] maintain an action for the conversion of money." *Gen. Motors Corp. v. Douglass*, 206 Ill. App. 3d 881, 890 (1st Dist. 1990) (citing *Eggert v. Weisz*, 839 F.2d 1261, 1264 (7th Cir. 1988)). Money that represents a general debt or obligation—such as the present request for a reimbursement—falls outside of these limited circumstances. *See, e.g.*, *id.*; *Krieger v. Adler, Kaplan & Begy*, No. 94 C 7809, 1996 U.S. Dist. LEXIS 113, *44-47 (N.D. Ill. Jan. 4, 1996) (noting plaintiff must be able to describe money as "specific chattel" belonging to plaintiff at all times); *see also Eggert*, 839 F.2d at 1261; *Rasmussen v. Sports Media Sales, Inc.*, 691 F. Supp. 153 (N.D. Ill. 1988). Plaintiffs' request for refunds equates to a general debt or obligation not covered by the tort of conversion.

### 2. Plaintiffs Have Not Pled an Unconditional Right to the Property.

Plaintiffs have further failed to allege an "absolute and unconditional right" to possession of the property at issue. *See In re Karavidas*, 2013 IL 115767 at ¶ 61. A plaintiff's property right must exist "<u>at all times</u>," even for conversion of money claims. *Triumph Packaging Grp. v. Ward*, 2012 U.S. Dist. 154447, 18 (N.D. Ill. Oct. 29, 2012) (emphasis in original). Right to possession must be more than "conditional and attenuated;" it must be "absolute and immediate." *Id.* at 18-19. Not only does Plaintiffs' Complaint lack allegations to this effect, but Plaintiffs cannot cure this defect with additional opportunities to replead. Plaintiffs' right to a refund (if any such right exists) is conditioned upon the University's alleged failure to provide services to Plaintiffs. Consequently, Plaintiffs cannot allege an unconditional right to possession of property. To hold otherwise would transform every breach of contract claim into a conversion claim.

### 3. Plaintiffs Have Not Pled a Demand for Possession.

Finally, Plaintiffs have failed to plead a demand for possession of the "property" at issue.

Although Plaintiffs generically assert the University "refuses to remit" refunds,[9] they have not alleged any facts supporting a demand for possession. As such, the conversion claim must be dismissed. *Krieger*, 1996 U.S. Dist. LEXIS 113, at *44-47 (dismissing claim where plaintiff failed to allege demand for possession and property sought was money for alleged reimbursement).

## CONCLUSION

Because this Court lacks subject matter jurisdiction over Plaintiffs' claims, and the Illinois Court of Claims has exclusive jurisdiction over any claims capable of surviving sovereign immunity, this Court should dismiss Plaintiffs' claims under Rule 12(b)(1). Notwithstanding, each such claim is facially and incurably deficient, and should be dismissed under Rule 12(b)(6).

WHEREFORE, the University respectfully requests this Court dismiss Plaintiffs' Complaint, and for any other relief this Court deems equitable and just.

Dated: August 7, 2020

Respectfully submitted,

**THE UNIVERSITY OF ILLINOIS**
**THE BOARD OF TRUSTEES OF THE UNIVERSITY OF ILLINOIS**

By: */s/ Gregory E. Ostfeld*
Gregory E. Ostfeld (Attorney No. 6257163)
ostfeldg@gtlaw.com
Tiffany S. Fordyce (Attorney No. 235063)
fordycet@gtlaw.com
Kara E. Angeletti (Attorney No. 6329388)
angelettik@gtlaw.com
Greenberg Traurig, LLP
77 West Wacker Drive, Suite 3100
Chicago, Illinois 60601
Tel: (312) 456-8400
*Attorneys for the University of Illinois and the Board of Trustees of the University of Illinois*

---

[9] *See* Compl. ¶¶ 141, 150, 159.

15

## CERTIFICATE OF SERVICE

I, Gregory E. Ostfeld, certify that on August 7, 2020, a true and correct copy of the Memorandum of Law in Support of **Defendant's Motion to Dismiss Plaintiffs' Complaint** were served electronically through the Northern District of Illinois CM/ECF electronic filing on all counsel of record.

*/s/ Gregory E. Ostfeld*
One of Defendants' Attorneys