## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| RICHARD PLACKO, CINDY PLACKO, and JOSHUA PLACKO, Individually And On Behalf Of All Others Similarly Situated,<br><br>     Plaintiffs,<br><br>  v.<br><br>THE UNIVERSITY OF ILLINOIS SYSTEM and RAMON CEPEDA, KAREEM DALE, DONALD J. EDWARDS, RICARDO ESTRADA, PATRICIA BROWN HOLMES NAOMI D. JAKOBSSON, STUART C. KING, EDWARD L. MCMILLAN, JILL B. SMART, ALI MIRZA, JOCELYN BRAVO, AUSTIN VERTHEIN, and GOVERNOR J.B. PRITZKER,<br><br>     Defendants. | Case No.: 1:20-cv-03451<br><br><br>**JURY TRIAL DEMANDED** |

## FIRST AMENDED COMPLAINT

Plaintiffs Richard Placko, Cindy Placko, and Joshua Placko (collectively, "Plaintiffs"), allege on personal knowledge against Defendants University of Illinois System[1] ("University") and Ramon Cepeda, Kareem Dale, Donald J. Edwards, Ricardo Estrada, Patricia Brown Holmes, Naomi D. Jakobsson, Stuart C. King, Edward L. McMillan, Jill B. Smart, Ali Mirza, Jocelyn Bravo, Austin Verthein, and Governor J.B. Pritzker, individuals and members of the Board of Trustees of the University (the "Board" or collectively with the University, "Defendants") as follows:

---

[1]  Including all Universities, branches and/or campuses within the System.

## NATURE OF THE CASE

1.      This is an action against Defendants for breach of contract, violation of the Constitutional takings and due process clause, unjust enrichment, conversion, and violation of Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.* ("ICFA").

2.      Specifically, as set forth more fully below, Plaintiffs and the members of the Classes contracted with Defendants for certain services; namely, access to on-campus facilities and in-person educational instruction together with the on-campus college experience, and paid for those services in the form of tuition, room and board, and other fees.  As a result of limitations Defendants have imposed, Defendants have not delivered the services that Plaintiffs and the members of the Class contracted and paid for.

3.      Alternatively, Defendants were unjustly enriched based upon monies received from Plaintiffs and the members of the Classes and restitution is owed to Plaintiffs and the members of the Classes.

4.      Alternatively, Defendants converted property belonging to Plaintiffs and the members of the Classes.

5.      As a result, Plaintiffs and the members of the Classes are entitled to a refund and/or restitution on tuition, room and board, and fees paid for services, facilities, access and/or opportunities not delivered.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because at least one class member is of diverse citizenship from one Defendant, there are more than 100 Class members, and the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs.

7.     This Court has personal jurisdiction over Defendants because Defendants conduct business in Illinois and have sufficient minimum contacts with Illinois.

8.     Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District.  Specifically, all monies paid for tuition, room and board, and other fees that is the subject of this action were paid in this District.

## PARTIES

9.     Plaintiff Joshua Placko is a citizen and resident of Illinois and a student at The University of Illinois at Urbana-Champaign who attended Defendants' institution during the Spring 2020 semester.

10.     Plaintiffs Richard Placko and Cindy Placko are the parents of Plaintiff Joshua Placko and are citizens and residents of Illinois.  Plaintiffs Richard Placko and Cindy Placko were in good financial standing at Defendants' institution having paid in whole or in combination tuition, fees, and costs assessed and demanded by Defendants for the Spring 2020 semester.

11.     Defendant University of Illinois System is a public university system consisting of University of Illinois – Chicago, University of Illinois – Springfield, and University of Illinois – Urbana-Champaign.

12.     Defendants Ramon Cepeda, Kareem Dale, Donald J. Edwards, Ricardo Estrada, Patricia Brown Holmes, Naomi D. Jakobsson, Stuart C. King, Edward L. McMillan, Jill B. Smart, Ali Mirza, Jocelyn Bravo, Austin Verthein, and Governor J.B. Pritzker are individuals and members of the Board of Trustees of the University of Illinois.

3

## FACTS

### University Background Information

13.     Plaintiffs bring this case as a result of Defendants' decision not to issue appropriate refunds and/or restitution for the Spring 2020 semester after canceling in-person/on-campus classes and changing all classes to an online/remote format, closing most campus buildings, and requiring all students who could leave campus to leave.

14.     To encourage and solicit prospective students to enroll at the University for on-campus learning and to use the campus facilities, the University, through its website and other marketing materials promotes the benefits of its on-campus experience, encouraging prospective students to apply to the University and join its on-campus life and education experience. In fact, on its website, the University discusses its activities, culture and traditions, and states: "The college experience extends beyond the walls of the classroom . . . ."  *See* Exhibit A (also at https://admissions.illinois.edu/Discover/Campus-Life/activities).

15.     Through its website, the University encouraged prospective enrollees to visit its campuses as part of its inducement of prospective students to apply to the University and join its on-campus life and education experience.  *See* Exhibit B (also at https://web.archive.org/web/20190706073953if_/https://admissions.illinois.edu/visit).

16.     In order to attend the University for on-campus learning, prospective students are required to complete its application process which is explained on its website.  *See* Exhibit C (also at https://admissions.illinois.edu/Apply/Freshman/process).

17.     After each prospective student of the University submits his/her application, on its website, the University describes its process for reviewing submitted applications.  *See* Exhibit D (also at https://admissions.illinois.edu/Apply/Freshman/review).

18.    The process for admission for transfer students and other non-freshman applicants is virtually the same as described above.

19.    After completing the University's application and after consideration by the University, successful applicants, including Plaintiff Joshua Placko, receive a letter of acceptance along with instructions to be followed in order to matriculate at the University for on-campus learning.  Additionally, after a student has been accepted for admission to the University, its website sets forth the "…simple steps to complete your enrollment."  *See* Exhibit E (also at https://admissions.illinois.edu/Apply/admitted).

20.    Plaintiff's application and acceptance letter to the University are not attached because the application was completed online, and Plaintiff was not able to locate his copies of these documents.  Upon information and belief, the University is in possession of all applications and acceptance letters for prospective class members, including Plaintiff Joshua Placko.

21.    As a condition for prospective students at the University to receive access to campus facilities and on-campus learning, each person (including Plaintiff Joshua Placko) is required to pay tuition and fees, and for those that choose to live on campus and participate in the University's meal plan, payment of those additional charges. Tuition at the University for the 2019-2020 academic year starts at $12,036 for an in-state resident, starts at $29,178 for an out-of-state resident, and starts at $30,052 for an international student.  *See* Exhibit F.  These rates may be higher depending on each student's major.  Room and Board costs (which includes a dining plan) at the University for the year were approximately $15,000 (*see* Exhibit G).  The University also offers a stand-alone meal plan that costs between $2,192 and $6,202 for the 2019-2020 academic year.  *See* Exhibit H.

22.     The tuition charged by the University, as set forth above, is for in-person on-campus instruction.

23.     In addition to tuition, the University students may be charged various fees, including, but not limited to: (1) Academic Facility Maintenance Fund Assessment, (2) General Fee, (3) Service Fee, (4) Health Service Fee, (5) Health Insurance Fee, (6) Library and Information Technology Fee, (7) Transportation Fee, and (8) Student-Initiated Fees.  *See* Exhibit I (also at https://registrar.illinois.edu/tuition-fees/fee-info/).  The University estimated these fees at more than $4,000 for the Fall 2019-Spring 2020 school year.[2]

24.     By way of example, because of the University's entreaties to visit its campus, Plaintiff Joshua Placko did visit its campus in April 2018 to assist with his decision to apply to and attend the University.  Plaintiff Joshua Placko submitted his application to the University in or around October 2018 and received his acceptance letter from the University in December 2018.

25.     Plaintiff Joshua Placko was enrolled as a full-time student for the Spring 2020 semester at the University.

26.     As a precondition for enrollment, Plaintiffs were required to and did pay tuition, as did members of the Classes.

27.     There are hundreds, if not thousands, of institutions of higher learning in this country.

28.     Many institutions of higher learning offer curriculum and instruction that is offered on a remote basis through online learning which do not provide for physical attendance by the students, and generally charge lower tuition rates.

29.     The University offers an in-person, hands on curriculum.

---

[2]     *See* https://cost.illinois.edu/Home/Cost/R/U/Compare/FullTime/120198?ViewYearFirst=1

30. Plaintiff Joshua Placko and members of the Classes did not choose to attend another institution of higher learning, but instead chose to attend the University and enroll in an in-person basis at a significantly higher tuition.

31. The tuition and fees for in-person instruction at the University are higher than tuition and fees for online institutions because such costs cover not just the academic instruction, but encompass an entirely different experience which includes, but is not limited to:

(a) Face to face interaction with professors, mentors, and peers;

(b) Access to facilities such as computer labs, study rooms, laboratories, and libraries;

(c) Student governance and student unions;

(d) Extra-curricular activities, groups, and intramurals;

(e) Student art, cultures, and other activities;

(f) Social development and independence;

(g) Hands on learning and experimentation; and

(h) Networking and mentorship opportunities.

32. Plaintiff Joshua Placko enrolled at the University to earn a degree that included the receipt of taking courses at the campus with live teacher and peer interaction.

33. Defendants use an educational calendar of two semesters, fall and spring. The Spring 2020 semester ran from January 21, 2020 through May 6, 2020, plus a period for final exams.

**The University's Response to COVID-19**

34. On March 11, 2020, Defendants announced that all classes were moving to "alternative course delivery" (*i.e.*, online) after Spring Break.

35.     Spring Break occurred on March 14, 2020 through March 22, 2020.

36.     On March 16, 2020, Defendants announced that they were suspending face-to-face instruction for the rest of the Spring 2020 semester.  Defendants also announced they intended to resume instruction using "alternative delivery methods" beginning Monday, March 23, 2020.

37.     Also, on March 16, 2020, Defendants announced they were requiring all students who could safely do so, to return to their permanent home address to take their classes for the rest of the semester.  No "move out by" date was included in this announcement.

38.     On or about March 17, 2020, Defendants announced that they had cancelled graduation ceremonies previously scheduled for May 16, 2020 and instead would be mailing diplomas to Spring 2020 graduates.

39.     On March 20, 2020, Defendants announced that all students living on campus needed to vacate campus by March 21, 2020 at 2:00 p.m.

40.     On March 24, 2020, Defendants announced that some courses would be switched to "pass/no pass" (also referred to as "PP/NP") grading rather than standard course grading (A/B/C/D/F).  As announced, for those courses switched to "pass/no pass" grading by Defendants, there was no option for Plaintiff Joshua Placko or other students at the University of Illinois to select standard course grading.

41.     As described in the Academic Policy Modifications – Spring 2020 from the Office of the Provost, "[c]ourses assessed as PP/NP will not affect student GPA.  This could be detrimental to students who were expecting to earn a high grade in the course.  Programs with licensure requirements might be affected by PP/NP grading."  This announcement also states: "Although we have indications that external stakeholders (employers, graduate schools) will not penalize students for PP/NP, we cannot guarantee that this will be universally true."

42.     Defendants suspended or restricted in-person on-campus activities.

43.     Plaintiff Joshua Placko and members of the Classes were deprived of the benefits of on-campus learning and the use of campus facilities as set forth more fully herein.

44.

45.     In their April 10, 2020 communication, Defendants discussed certain billing adjustments already in process related to University Housing (including dining), and certain downward adjustments to Student Service and Campus Transportation fees to reflect the loss of access.  In this communication, Defendants admit that some campus fees are not being adjusted.

46.     Despite Defendants' cancellation of live in-person instruction, its eviction of students from campus facilities for the remainder of the Spring 2020 semester, and the cancellation of all campus activities, Defendants have not offered adequate refunds or restitution of tuition, room and board, and fees paid to cover the cost of on-campus services that were no longer provided to students.

47.     To date, Defendants have failed and continue to fail to refund any portion of Plaintiffs' and the Class members' Spring 2020 semester tuition payment or to provide any restitution.

48.     Moreover, Plaintiff Joshua Placko and members of the Classes were deprived of fully utilizing services for which they already paid, including, but not limited to, access to campus facilities and other opportunities.

49.     To date, Defendants have failed to adequately and properly refund various fees to Plaintiffs and the members of the Classes for university services which Defendants failed to provide as previously agreed upon or to provide any adequate or proper restitution.

50.     To date, Defendants have failed to adequately and properly refund room and board payments made by Plaintiffs and the members of the Class for services which Defendants failed to provide as previously agreed upon or to provide any adequate or proper restitution.

51.     Regarding the Fall 2020 semester, the University's website (as of August 21, 2020[3]) states in relevant part:

> Fall 2020 will be an on-campus semester with as much in-person instruction as restrictions of space, health and safety allow.
>
> We will maximize in-person classes as much as possible, especially for courses such as labs and performance-based courses.
>
> ***
>
> How will I be able to tell if my classes moved online?
>
> In reviewing your schedule in Student Self-Service or my Illini on or after August 1, courses will be identified as 'online' and they also will have no meeting location. You won't be able to access the "Add/Drop" or "Register for Classes" menu options until your time ticket opens again, but you can see your schedule through Student Schedule-Detail or Concise or View Class Schedules menu options.

**The University's Financial Resources**

52.     The University of Illinois and U of I Foundation have a combined active endowment of $2.82 billion as of June 30, 2019 and raised $462.9 million in its fiscal year 2019 fundraising campaign.

53.     In addition to its endowment, tuition income and other revenue, the Federal Government also responded to the COVID-19 pandemic in ways that benefited the University and covered costs associated with the disruption by instituting the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act").

---

[3]     *See* https://covid19.illinois.edu/on-campus/on-campus-students/.

54.     To assist colleges and universities and their students, the CARES Act includes funding to assist college students whose lives and educations have been disrupted by COVID-19. Colleges and universities can distribute the cash grants to students to use on course materials, technology, food, housing, healthcare, and childcare.  The funding flows to the states who then distribute the funds to colleges and universities (that have completed an application).  The CARES Act requires that approximately half the funds received by colleges and universities be distributed to its students.  The use of the other half of CARES Act funds received by colleges and universities is limited and specific, as stated in an April 21, 2020 letter from Betsy Devos, the Secretary of Education, to college and university presidents[4]:

> [T]he CARES Act allows your institution to use up to one-half of the total funds received… to cover any costs associated with significant changes to the delivery of instruction due to the coronavirus.

55.     Upon information and belief, through the CARES Act, the U.S. Department of Education ("DOE") allocated $63,054,655 to the University of which the minimum allocation to be awarded for emergency financial aid grants to University students was $31,527.328.

56.     On or about April 15, 2020 the University signed, certified, and returned an assurance the school will use at least 50% of the funds received from the CARES Act to provide Emergency Financial Aid Grants to students.[5]

## APPLICABLE SUBSTANTIVE LAW

57.     Defendants are obligated to uphold the Illinois and United States Constitution.

58.     By denying in-person learning and on-campus benefits and opportunities, Defendants have violated the Illinois Constitution, Article I, §§ 2 and 15, and the United States Constitution's Fifth and Fourteenth Amendments.  Plaintiffs and members of the Classes are

---

[4]     *See* https://www2.ed.gov/about/offices/list/ope/heerfinstitutionalcoverletter.pdf.
[5]     *See* https://covid19.illinois.edu/more-information/reports/cares-act-reporting/

entitled to a pro-rated refund or restitution of tuition, housing, and mandatory fees for the duration

of the University's COVID-19 related closures for the in-person education and on-campus services

and opportunities that Plaintiff and members of the Classes have been denied.

59.     Illinois's substantive laws apply to the proposed Classes, as defined herein.

60.     Illinois's substantive laws may be constitutionally applied to the claims of Plaintiff

and the Classes under the Due Process Clause, 14th Amend., § 1, and the Full Faith and Credit

Clause, art. IV., § 1, of the U.S. Constitution.  Illinois has significant contact, or significant

aggregation of contacts, to the claims asserted by Plaintiffs and members of the Classes, thereby

creating state interests that ensure that the choice of Illinois state law is not arbitrary or unfair.

Furthermore, the circumstances that relate to the disputed transaction(s) occurred primarily and

substantially in Illinois.

61.     The University is located in Illinois.

62.     All live in-person instruction occurs in Illinois, and all University housing for

students is located in Illinois.

63.     Plaintiffs, as well as a substantial number of Class members, are residents of

Illinois.

64.     All payments for Tuition, Fees, and Room and Board are sent to the University in

Illinois.

65.     All of the University's statements regarding Tuition, Fees, and Room and Board

cited throughout this Complaint were made in and emanated from Illinois.

66.     The application of Illinois's laws to the Classes is appropriate under Illinois's

choice-of-law rules because Illinois has significant contacts to the claims of Plaintiff and the

Classes, and Illinois has a greater interest in applying its laws here than any other interested state.

## CLASS REPRESENTATION ALLEGATIONS

67.     Plaintiffs bring this action on behalf of themselves and for the following classes of persons defined as:

### The Tuition Class:

All people who paid tuition for or on behalf of students enrolled in classes at the University for the Spring 2020 semester but were denied access to campus facilities and live in-person instruction and forced to use online distance learning platforms for a portion of the time for which the tuition was paid. This Class includes all people who in addition to paying tuition for or on behalf of students enrolled in classes at the University for the Spring 2020 semester, paid tuition for or on behalf of students enrolled in classes at the University for subsequent semesters but were denied access to campus facilities and live in-person instruction and forced to use online distance learning platforms for a portion of the time for which the tuition was paid.

### The Fees Class:

All people who paid fees for or on behalf of students enrolled in classes at the University for the Spring 2020 semester but were denied access to campus facilities and/or the items for which the fees were paid. This Class includes all people who in addition to paying fees for or on behalf of students enrolled in classes at the University for the Spring 2020 semester, paid fees for or on behalf of students enrolled in classes at the University for subsequent semesters but were denied access to campus facilities and/or the items for which the fees were paid.

### The Room and Board Class:

All people who paid the costs of room and board (housing and meals) for students enrolled in classes at the University for the Spring 2020 semester who were instructed to move out of their on-campus housing prior to the completion of that semester by the University. This Class includes all people who paid the costs of room and board (housing and meals) for students enrolled in classes at the University for subsequent semesters and did not receive their full benefits during those semesters.

### The Illinois Tuition Class

All Illinois residents who paid tuition for or on behalf of students enrolled in classes at the University for the Spring 2020 semester but were denied access to campus facilities and live in-person instruction and forced to use online distance learning platforms for a portion of the time for which the tuition was paid. This Class includes all residents who in addition to paying tuition for or on behalf of students enrolled in classes at the University for the Spring 2020 semester, paid tuition for

or on behalf of students enrolled in classes at the University for subsequent semesters but were denied access to campus facilities and live in-person instruction and forced to use online distance learning platforms for a portion of the time for which the tuition was paid

**The Illinois Fees Class:**

All Illinois residents who paid fees for or on behalf of students enrolled in classes at the University for the Spring 2020 semester and thereafter but were denied access to the campus facilities and/or items for which the fees were paid. This Class includes all Illinois residents who in addition to paying fees for or on behalf of students enrolled in classes at the University for the Spring 2020 semester, paid fees for or on behalf of students enrolled in classes at the University for subsequent semesters but were denied access to campus facilities and/or the items for which the fees were paid.

**The Illinois Room and Board Class:**

All Illinois residents who paid the costs of room and board (housing and meals) for students enrolled in classes at the University for the Spring 2020 semester who were instructed to move out of their on-campus housing prior to the completion of that semester by the University. This Class includes all Illinois residents who paid the costs of room and board (housing and meals) for students enrolled in classes at the University for subsequent semesters and did not receive their full benefits during those semesters.

68.     Excluded from the Classes are Ramon Cepeda, Kareem Dale, Donald J. Edwards, Ricardo Estrada, Patricia Brown Holmes, Naomi D. Jakobsson, Stuart C. King, Edward L. McMillan, Jill B. Smart, Ali Mirza, Jocelyn Bravo, Austin Verthein, and Governor J.B. Pritzker, and any of their respective members, affiliates, parents, subsidiaries, officers, directors, employees, successors, or assigns; and the judicial officers, and their immediate family members, and Court staff assigned to this case. Plaintiffs reserve the right to modify or amend the Class definitions, as appropriate, during the course of this litigation.

69.     Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs and members of the Classes can prove the elements of their claims on a class-wide basis

using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

70.     This action has been brought and may be properly maintained on behalf of the Classes proposed herein under the laws of the State of Illinois.

71.     Defendants have acted or refused to act on grounds generally applicable to Plaintiffs and the members of the Classes, thereby making appropriate final injunctive relief and declaratory relief, as described herein, with respect to members of the Classes as a whole.

**Numerosity**

72.     The members of the Classes are so numerous and geographically dispersed that individual joinder of all members of the Classes is impracticable.  Plaintiffs are informed and believe that there are thousands of members of the Classes and includes all students who enrolled at any school or department of Defendants for the 2020 Spring semester or thereafter, as defined above, the precise number being unknown to Plaintiffs, but such number being ascertainable from Defendants' records.  The members of the Classes may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include the use of Defendants' own student records, U.S. mail, electronic mail, internet postings, and/or published notice.

**Commonality and Predominance**

73.     This action involves common questions of law and fact, which predominate over any questions affecting individual members of the Classes, including, without limitation:

(a)     Whether Defendants engaged in the conduct alleged herein;

(b)     ;

15

(c)     Whether Defendants breached their contracts with Plaintiffs and the other members of the Tuition Class by retaining the portion of their tuition representing the difference between what was agreed upon and what was provided;

(d)     Whether Defendants complied with the Constitutional requirements for seizing and retaining Plaintiffs' and the other members of the Tuition Classes property without providing the services that the tuition was intended to cover;

(e)     Whether Defendants afforded Plaintiffs and the other Tuition Class members notice and due process before seizing and retaining their property;

(f)     Whether Defendants were unjustly enriched by retaining tuition payments of Plaintiffs and the Tuition Class representing the difference between what was agreed upon and what was provided;

(g)     Whether Defendants breached their contracts with Plaintiffs and the other members of the Fees Class by retaining fees without providing the services the fees were intended to cover;

(h)     Whether Defendants complied with the Constitutional requirements for seizing and retaining Plaintiffs' and the other members of the Fees Class property without providing the services that the fees were intended to cover;

(i)     Whether Defendants afforded Plaintiffs and the other Fees Class members notice and due process before seizing and retaining their property;

(j)     Whether Defendants were unjustly enriched by retaining fees of Plaintiffs and the other members of the Fees Class without providing the services the fees were intended to cover;

16

(k)     Whether Defendants breached their contracts with members of Plaintiffs and the Room and Board Class by retaining fees without providing the services the fees were intended to cover;

(l)     Whether Defendants complied with the Constitutional requirements for seizing and retaining Plaintiffs' and the other members of the Room and Board Classes property without providing the services that the room and board was intended to cover;

(m)     Whether Defendants afforded Plaintiffs and the other Room and Board Class members notice and due process before seizing and retaining their property;

(n)     Whether Defendants were unjustly enriched by retaining fees of Plaintiffs and members of the Room and Board Class without providing the services the fees were intended to cover;

(o)     Whether Defendants committed conversion as detailed herein against Plaintiffs and the other members of the Tuition Class;

(p)     Whether Defendants committed conversion as detailed above against Plaintiffs and the other members of the Fees Class;

(q)     Whether Defendants committed conversion as detailed herein against Plaintiffs and members of the Room and Board Class;

(r)     Whether Defendants' conduct described herein constituted unfair trade practices under the Illinois Consumer Fraud and Deceptive Trade Practices Act;

(s)     Whether Defendants' conduct described herein constituted deceptive trade practices under the Illinois Consumer Fraud and Deceptive Trade Practices Act;

(t)     Whether the Defendants should be compelled to provide restitution to the various Classes for monies paid for various services which were not fully provided;

(u)     Whether certification of any or all of the Classes proposed herein is appropriate;

(v)     Whether members of the Classes are entitled to declaratory, equitable, or injunctive relief, and/or other relief; and

(w)     The amount and nature of relief to be awarded to Plaintiffs and the other members of the Classes.

**Typicality**

74.     Plaintiffs' claims are typical of the other members of the Classes' claims because, among other things, all members of the Classes were similarly situated and were comparably injured through Defendants' wrongful conduct as set forth herein.

**Adequacy**

75.     Plaintiffs are adequate representatives of the Classes because their interests do not conflict with the interests of other members of the Classes they seek to represent. Plaintiffs have retained counsel competent and experienced in complex litigation; and Plaintiffs intend to prosecute the action vigorously. The Classes' interests will be fairly and adequately protected by Plaintiffs and their counsel.

**Superiority**

76.     A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiffs and other members of the Classes are relatively small compared to the burden and expense that

would be required to individually litigate their claims against Defendants, so it would be impracticable for members of the Classes to individually seek redress for Defendants' wrongful conduct.

77.    Even if Class members could afford individual litigation, the Court system likely could not.  Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system.  By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, comprehensive supervision by a single court, and finality of the litigation.

78.    The prosecution of separate actions by or against individual members of the Classes would create a risk of inconsistent or varying adjudications that would confront Defendants with incompatible standards of conduct.

79.    The dollar amount of the individual claims is insufficient to support separate actions; thus, a multitude of potential claimants have small potential damages that require aggregation in order to be pursued.

80.    This lawsuit is manageable as a class action because the proofs are essentially the same for all members of the Classes on all of the principal issues.

81.    Defendants' conduct was the same as to all members of the Class.

82.    The members of the Classes do not have a significant interest in controlling the prosecution of separate actions involving the subject matter of this litigation, especially because the individual claims are too small individually to warrant litigating their claims on an individual basis.

## FOR A FIRST COLLECTIVE CAUSE OF ACTION

## (BREACH OF CONTRACT)

83. Plaintiffs incorporate by reference paragraphs 1 through 82 as if fully set forth herein.

84. Plaintiffs bring this count on behalf of the Tuition Class.

85. Plaintiffs and the Tuition Class entered into contracts with Defendants which provided that Plaintiffs and other members of the Tuition Class would pay tuition for or on behalf of students and, in exchange, Defendants would provide access to campus facilities and live in-person instruction in a physical classroom.

86. The terms of this contract were set forth by Defendants through their website, academic catalogs, student handbooks, marketing materials and other circulars, bulletins, and publications.

87. Defendants' website and recruitment brochures are the primary means through which Defendants target prospective new students and attempt to influence such students to accept Defendants' offer to attend their University as opposed to other institutions of higher learning.

88. These publications, together with the custom and practice of the parties and the course of performance of the parties, form the basis of the bargain on which prospective students agree to accept Defendants' offer and enroll in the University.

89. Through these publications, together with the custom and practice of the parties and the course of performance of the parties, Defendants market and enroll students primarily in two separate and distinct products: (1) on-campus, and (2) online.

90. Defendants specifically market certain classes and degree programs as being offered on a fully online basis.

91. Indeed, Defendants dedicate an entire section of their website to these programs, known as "Illinois Online".

92. Conversely, Defendants' publications with respect to non-online classes are full of references to the on-campus experience, including numerous references to student activities; campus amenities; arts and culture; athletics; and the like.

93. Upon information and belief, there were no references or disclaimers in any of Defendants' websites, circulars, bulletins, publications, brochures, or other advertisements that even referenced the possibility of in-person classes being changed to fully online classes at Defendants' discretion or for any other reason whatsoever after the start of a given term.

94. Defendants further emphasized the distinction between in-person and online class offerings through its academic catalogs and online course listings.

95. Each of Defendants' academic programs is listed separately on the University's Office of the Registrar website with the specific tuition and fees charged for the specific program.

96. The website relating to areas of study is found at http://catalog.illinois.edu/undergraduate/. The websites relating to tuition and fees is found at https://registrar.illinois.edu/tuition-fees/tuition-fee-rates/ug-tuition-rates-2021/.

97. Students in many of Defendants' schools and programs were subject to personal attendance requirements as set forth in various departmental policies and handbooks, evidencing Defendants' requirement, and the student's acceptance of the requirement, that such students physically attend such classes on campus. This policy includes:

> If, after receiving a notice …, a student's attendance continues to be irregular, the instructor may report this fact to the student's college dean. The dean of the student's college, in consultation with the instructor, may determine that the student's attendance has become so irregular that the student's scholarship is likely to be severely impaired. The dean may require the student to withdraw from the course with a grade of Withdrawal or Failure

98.     That Defendants offered to provide, and members of the Tuition Class expected to receive, live in-person instruction is further evidenced by the parties' prior course of conduct.

99.     Those classes for which students expected to receive in-person instruction began the semester by offering in-person instruction.

100.    Each day for the weeks and months leading up to the cancellation of in-person classes, students attended physical classrooms to receive in-person instruction, and Defendants provided such in-person instruction.

101.    Each day for the weeks and months prior to announced closures students had access to the full campus.

102.    Accordingly, it is clear that Defendants offered to provide live in-person education and that members of the Tuition Class accepted that offer by paying tuition and attending classes in the Spring 2020 semester.

103.    Based on this mutual assent, Plaintiffs and other members of the Tuition Class fulfilled their end of the bargain when they paid tuition for the Spring 2020 semester, either by paying out-of-pocket or by using student loan financing, or otherwise.

104.    However, Defendants breached the contract with Plaintiffs and the Tuition Class by moving all classes for the Spring 2020 semester to online distance learning platforms and restricting the on-campus experience without reducing or refunding tuition accordingly.

105.    Rather, it is clear from the facts and circumstances that Defendants offered two separate and distinct products, one being live, in-person education, with its ancillary and related services and the other being online distance education.

106.    Plaintiffs and members of the Tuition Class accepted Defendants' offer for live in-person education and paid valuable consideration in exchange.

107.     However, after accepting such consideration from Plaintiffs and the Tuition Class, Defendants provided an entirely different product, which deprived Plaintiffs and the Tuition Class of the benefit of the bargain for which they had already paid.

108.     Defendants retained tuition monies paid by Plaintiffs and other members of the Tuition Class, without providing them the full benefit of their bargain.

109.     Plaintiffs and other members of the Tuition Class have suffered damage as a direct and proximate result of Defendants' breach amounting to the difference in the fair market value of the services and access for which they contracted and the services and access which they actually received.

110.     As a direct and proximate result of Defendants' breach, Plaintiffs and the Tuition Class are entitled to damages, to be decided by the trier of fact in this action.

## FOR A SECOND COLLECTIVE CAUSE OF ACTION

### (VIOLATION OF THE TAKINGS CLAUSE - 42 U.S.C. § 1983)

111.     Plaintiffs incorporate by reference paragraphs 1 through 82 as if fully set forth herein.

112.     Plaintiffs bring this count on behalf of the Tuition Class.

113.     The Takings Clause of the Fifth Amendment provides that private property shall not "be taken for public use, without just compensation." U.S. Const. Amend. V.  The Takings Clause is made applicable to the states through the Fourteenth Amendment. *See* U.S. Const. Amend. XIV; *Murr v. Wisconsin*, 137 S. Ct. 1933, 1942, 198 L. Ed. 2d 497 (2017) (citing *Chicago, B. & Q.R. Co. v. Chicago*, 166 U.S. 226, 17 S. Ct. 581, 41 L. Ed. 979 (1897)).  Similarly, Article I, § 15 of the Illinois Constitution provides that private property shall not be taken "for public use without just compensation as provided by law." Illinois Const. Art. 1, § 15. Thus, the takings

clauses of the U.S. and Illinois Constitutions prohibit states, and state agencies like the Board and University, from taking private property for public use without just compensation.

114.    Takings claims may properly be brought against state agencies and are not barred by sovereign immunity.

115.    Common law has recognized that there is a property right by an owner in funds held in an account managed by another.  Here, Defendants received payment of tuition from private citizens, as consideration for the benefit of receiving in-person course instruction and other on-campus benefits.  The funds in issue are thus private in nature but held by a public entity.  Plaintiffs and the other members of the Tuition Class have a protected property right in all sums they paid to the University.

116.    Defendants violated the takings clauses by failing to return to Plaintiffs and members of the Tuition Class that portion of the tuition for which they received nothing, or significantly less than what they bargained for in return.  Neither Plaintiffs nor the other Tuition Class members have made a knowing and voluntary waiver of their constitutional right under the Fifth Amendment or under the Illinois Constitution to be paid just compensation for the taking of their property rights in those funds.

117.    Thus, Plaintiffs and the Tuition Class are entitled to just compensation for the taking of their property.

**FOR A THIRD COLLECTIVE CAUSE OF ACTION**

**(VIOLATION OF DUE PROCESS - 42 U.S.C. § 1983)**

118.    Plaintiffs incorporate by reference paragraphs 1 through 82 as if fully set forth herein.

119.    Plaintiffs bring this count on behalf of the Tuition Class.

120.     Government actors must provide adequate due process procedures when depriving citizens of protected property interests. U.S. Const. Amend. XIV; Illinois Const. Art. I, § 2.

121.     The due process clauses of the U.S. and Illinois Constitutions prohibit the State of Illinois and the governmental agencies that it creates, such as the Board and University, from depriving citizens of a protected property interest without due process of law.

122.     Plaintiffs and the Tuition Class members had a constitutionally protected property interest in the tuition they paid for in-person education and opportunities but were denied due to the actions of Defendants.

123.     Defendants took action affecting Plaintiffs and the other Tuition Class members' constitutionally protected property interests by retaining amounts from Plaintiffs and the Tuition Class members' payment of tuition.

124.     Defendants deprived Plaintiffs and the other Tuition Class members of their protected property interests without due process of law by, for example, failing to provide notice of how refunds and/or restitution could be obtained from Defendants for the property belonging to Plaintiffs and the members of the Tuition Class but unlawfully retained by Defendants.

125.     Defendants' failure to comply with the requirements of due process has resulted in substantial detriment to the Plaintiffs and the Tuition Class.

## FOR A FOURTH COLLECTIVE CAUSE OF ACTION

### (UNJUST ENRICHMENT)

126.     Plaintiffs incorporate by reference paragraphs 1 through 82 as if fully set forth herein.

127.     Plaintiffs bring this count on behalf of the Tuition Class.

128.     This claim is pled in the alternative to, and to the extent it is determined a contract does not exist or otherwise apply to, the contract-based claim set forth in the First Cause of Action above.

129.     Plaintiffs and other members of the Tuition Class paid substantial tuition for live in-person instruction in physical classrooms on a physical campus.

130.     Plaintiffs and other members of the Tuition Class conferred a benefit on Defendants when they paid this tuition.

131.     Defendants have realized this benefit by accepting such payment.

132.     However, Plaintiffs and members of the Tuition Class did not receive the full benefit of their bargain.

133.     Instead, Plaintiffs and members of the Tuition Class conferred this benefit on Defendants in expectation of receiving one product, that being live in-person instruction in a physical classroom along with the on-campus experience of campus life as described more fully above, but were provided with a completely different product carrying a different fair market value.

134.     Defendants have retained this benefit, even though Defendants failed to provide the services for which the tuition was collected, making Defendants' retention unjust under the circumstances, and restitution appropriate.

135.     Equity and good conscience require that Defendants return a portion of the monies paid in tuition to Plaintiffs and other members of the Tuition Class.

**FOR A FIFTH COLLECTIVE CAUSE OF ACTION**

**<u>(BREACH OF CONTRACT)</u>**

136.     Plaintiffs incorporate by reference paragraphs 1 through 82 as if fully set forth herein.

137.    Plaintiffs bring this count on behalf of the Fees Class.

138.    In addition to tuition, Defendants charge a number of mandatory fees.

139.    In publications and, particularly on the website, Defendants specifically describe the nature and purpose of each fee.

140.    Some fees apply broadly to all or certain groups of students, while other fees are program or course based.

141.    In accepting these terms and paying these fees, a contract was formed between Plaintiffs, including the Fees Class, and Defendants, which provided that Plaintiffs and other members of the Fees Class would pay these fees for or on behalf of themselves and, in exchange, Defendants would provide the services related to those fees, as advertised.

142.    Plaintiffs and other members of the Fees Class fulfilled their end of the bargain when they paid these fees for the Spring 2020 semester, either by paying out-of-pocket or by using student loan financing, or otherwise.

143.    However, Defendants breached the contract with Plaintiffs and the Fees Class by moving all classes for the Spring 2020 semester to online distance learning platforms, constructively evicting students from campus, closing most campus buildings and facilities, and cancelling most student activities.

144.    Defendants have acknowledged such breach and have already refunded or offered to refund some of these fees.

145.    However, such refunds are arbitrary and wholly insufficient.

146.    Plaintiffs received a partial refund for only some of the fees paid.

147.    By retaining fees paid by Plaintiffs and other members of the Fees Class, without providing them the full benefit of their bargain, Defendants have not performed the contract.

148.     Plaintiffs and other members of the Fees Class have suffered damages as a direct and proximate result of Defendants' breach, namely being deprived of the value of the benefits and services the fees were intended to cover.

149.     As a direct and proximate result of Defendants' breach, Plaintiffs and the Fees Class are legally and equitably entitled to damages, to be decided by the trier of fact in this action.

## FOR A SIXTH COLLECTIVE CAUSE OF ACTION

## (VIOLATION OF THE TAKINGS CLAUSE - 42 U.S.C. § 1983)

150.     Plaintiffs incorporate by reference paragraphs 1 through 82 as if fully set forth herein.

151.     Plaintiffs bring this count on behalf of the Fees Class.

152.     The Takings Clause of the Fifth Amendment provides that private property shall not "be taken for public use, without just compensation." U.S. Const. Amend. V. The Takings Clause is made applicable to the states through the Fourteenth Amendment.  *See* U.S. Const. Amend. XIV; *Murr v. Wisconsin*, 137 S. Ct. 1933, 1942, 198 L. Ed. 2d 497 (2017) (citing *Chicago, B. & Q.R. Co. v. Chicago*, 166 U.S. 226, 17 S. Ct. 581, 41 L. Ed. 979 (1897)). Similarly, Article I, § 15 of the Illinois Constitution provides that private property shall not be taken "for public use without just compensation as provided by law." Illinois Const. Art. 1, § 15. Thus, the takings clauses of the U.S. and Illinois Constitutions prohibit states, and state agencies like the Board and University, from taking private property for public use without just compensation.

153.     Takings claims may properly be brought against state agencies and are not barred by sovereign immunity.

154.     Common law has recognized that there is a property right by an owner in funds held in an account managed by another.  Here, Defendants received payment of fees from private

citizens, as consideration for the benefit of receiving on-campus benefits -- the funds are thus private in nature but held by a public entity. Plaintiffs and the other members of the Fees Class have a protected property right in all sums they paid to Defendants.

155. Defendants violated the takings clauses by failing to return to Plaintiffs and members of the Fees Class that portion of the fees for which they received nothing, or significantly less than what they bargained for in return. Neither Plaintiffs nor the other Fees Class members have made a knowing and voluntary waiver of their constitutional right under the Fifth Amendment or under the Illinois Constitution to be paid just compensation for the taking of their property rights in those funds.

156. Thus, Plaintiffs and the Fees Class are entitled to just compensation for the taking of their property.

## FOR A SEVENTH COLLECTIVE CAUSE OF ACTION

## (VIOLATION OF DUE PROCESS - 42 U.S.C. § 1983)

157. Plaintiffs incorporate by reference paragraphs 1 through 82 as if fully set forth herein.

158. Plaintiffs bring this count on behalf of the Fees Class.

159. Government actors must provide adequate due process procedures when depriving citizens of protected property interests. U.S. Const. Amend. XIV; Illinois Const. Art. I, § 2.

160. The due process clauses of the U.S. and Illinois Constitutions prohibit the State of Illinois and the governmental agencies that it creates, such as Defendants, from depriving citizens of a protected property interest without due process of law.

161.    Plaintiffs and the Fees Class members had a constitutionally protected property interest in the fees they paid for on-campus services and opportunities but were denied due to the actions of Defendants.

162.    Defendants took action affecting Plaintiffs and the other Fees Class members' constitutionally protected property interests by retaining amounts from Plaintiffs and the Fee Class members' payment of fees.

163.    Defendants deprived Plaintiffs and the other Fees Class members of their protected property interests without due process of law by, for example:

(a)    Failing to provide timely notice to Plaintiffs and the Fees Class, whose identity and contact information Defendants either knew, or by exercise or reasonable diligence should have known, of the refundable nature of the fees;

(b)    Failing to design and implement criteria by which the fees can be refunded to Plaintiffs and the Fees Class in light of the University ceasing or severely limiting all on-campus activities due to the COVID-19 pandemic; and

(c)    Failing to design and implement a mechanism by which Plaintiffs and the other Fees Class members can obtain a refund of the fees in light of the University's ceasing or severely limiting all on-campus in-person activities due to the COVID-19 pandemic.

164.    Defendants' failure to comply with the requirements of due process has resulted in substantial detriment to the Plaintiff and the Fees Class.

### FOR AN EIGHTH COLLECTIVE CAUSE OF ACTION

### (UNJUST ENRICHMENT)

165.    Plaintiffs incorporate by reference paragraphs 1 through 82 as if fully set forth herein.

30

166.     Plaintiffs bring this count on behalf of the Fees Class.

167.     This claim is pled in the alternative to, and to the extent it is determined a contract does not exist or otherwise apply to, the contract-based claim set forth in the Fifth Cause of Action above.

168.     Defendants have received a benefit at the expense of Plaintiffs and other members of the Fees Class to which it is not entitled.

169.     Plaintiffs and other members of the Fees Class paid substantial student fees for on campus benefits, access and services and did not receive the full benefit of the bargain.

170.     Plaintiffs and other members of the Fees Class conferred this benefit on Defendants when they paid the fees.

171.     Defendants realized this benefit by accepting such payment.

172.     Defendants have retained this benefit, even though Defendants have failed to provide the services for which the fees were collected, making Defendants' retention unjust under the circumstances and restitution appropriate.

173.     Equity and good conscience require that Defendants return a pro-rata portion of the monies paid in fees to Plaintiffs and other members of the Fees Class.

## FOR A NINTH COLLECTIVE CAUSE OF ACTION

## (BREACH OF CONTRACT)

174.     Plaintiffs incorporate by reference paragraphs 1 through 82 as if fully set forth herein.

175.     Plaintiffs bring this count on behalf of the Room and Board Class (including a meal plan).

176.    Plaintiffs and other members of the Room and Board Class entered into contracts in the form of agreements with Defendants, that provided that Plaintiffs and other members of the Room and Board Class would pay monies and, in exchange, Defendants would provide housing in its residence halls and other campus affiliated-housing and a meal plan.

177.    Plaintiffs and other members of the Room and Board Class fulfilled their end of the bargain when they paid monies due and owing for their residence hall or other housing for the semester and a meal plan.  Plaintiffs and other members of the Room and Board Class were not provided housing for the entire semester or the agreed upon meal plan; accordingly, Plaintiffs and other members of the Room and Board Class are entitled to a refund.

178.    By retaining Room and Board fees paid by Plaintiffs and other members of the Room and Board Class, without providing them the full benefit of their bargain, Defendants have not performed the contract.

179.    Plaintiffs and other members of the Room and Board Class have suffered damage as a direct and proximate result of Defendants' breach, namely being deprived of the value of the benefits and services the Room and Board fees were intended to cover.

180.    As a direct and proximate result of Defendants' breach, Plaintiffs and the Room and Board Class are legally and equitably entitled to damages, to be decided by the trier of fact in this action.

## FOR A TENTH COLLECTIVE CAUSE OF ACTION

## (VIOLATION OF THE TAKINGS CLAUSE - 42 U.S.C. § 1983)

181.    Plaintiffs incorporate by reference paragraphs 1 through 82 as if fully set forth herein.

182.     Plaintiffs bring this count on behalf of the Room and Board Class (including a meal plan).

183.     The Takings Clause of the Fifth Amendment provides that private property shall not "be taken for public use, without just compensation."  U.S. Const. Amend. V. The Takings Clause is made applicable to the states through the Fourteenth Amendment. *See* U.S. Const. Amend. XIV; *Murr v. Wisconsin*, 137 S. Ct. 1933, 1942, 198 L. Ed. 2d 497 (2017) (citing *Chicago, B. & Q.R. Co. v. Chicago*, 166 U.S. 226, 17 S. Ct. 581, 41 L. Ed. 979 (1897)).  Similarly, Article I, § 15 of the Illinois Constitution provides that private property shall not be taken "for public use without just compensation as provided by law."  Illinois Const. Art. 1, § 15.  Thus, the takings clauses of the U.S. and Illinois Constitutions prohibit states, and state agencies like the Board and University, from taking private property for public use without just compensation.

184.     Takings claims may properly be brought against state agencies and are not barred by sovereign immunity.

185.     Common law has recognized that there is a property right by an owner in funds held in an account managed by another.  Here, Defendants received payment of Room and Board from private citizens.  The funds are thus private in nature but held by a public entity.  Plaintiffs and the other members of the Room and Board Class have a protected property right in all sums they paid to Defendants.

186.     Defendants violated the takings clauses by failing to return to Plaintiffs and members of the Room and Board Class that portion of the room and board for which they received nothing, or significantly less than what they bargained for in return.  Neither Plaintiffs nor the other Room and Board Class members have made a knowing and voluntary waiver of their

constitutional right under the Fifth Amendment or under the Illinois Constitution to be paid just compensation for the taking of their property rights in those funds.

187.     Thus, Plaintiffs and the Room and Board Class are entitled to just compensation for the taking of their property.

**FOR AN ELEVENTH COLLECTIVE CAUSE OF ACTION**

**<u>(VIOLATION OF DUE PROCESS - 42 U.S.C. § 1983)</u>**

188.     Plaintiffs incorporate by reference paragraphs 1 through 82 as if fully set forth herein.

189.     Plaintiffs bring this count on behalf of the Room and Board Class (including a meal plan).

190.     Government actors must provide adequate due process procedures when depriving citizens of protected property interests.  U.S. Const. Amend. XIV; Illinois Const. Art. I, § 2.

191.     The due process clauses of the U.S. and Illinois Constitutions prohibit the State of Illinois and the governmental agencies that it creates, such as Defendants, from depriving citizens of a protected property interest without due process of law.

192.     Plaintiffs and the Room and Board Class members had a constitutionally protected property interest in the Room and Board they paid but were denied due to the actions of the Defendants.

193.     Defendants took action affecting Plaintiffs and the other Room and Board Class members' constitutionally protected property interests by retaining amounts from Plaintiffs' and the Class members' payment of room and board.

194.     Defendants deprived Plaintiffs and the other Room and Board Class members of their protected property interests without due process of law by, for example:

(a)     Failing to provide timely notice to Plaintiffs and the Room and Board Class, whose identity and contact information Defendants either knew, or by exercise or reasonable diligence should have known, of the refundable nature of the room and board;

(b)     Failing to design and implement criteria by which the room and board can be refunded to Plaintiffs and the Room and Board Class in light of the University ceasing housing and meal plan options due to the COVID-19 pandemic; and

(c)     Failing to design and implement a mechanism by which Plaintiffs and the other Room and Board Class members can obtain a refund room and board in light of the University's ceasing housing and meal plan options due to the COVID-19 pandemic.

195.    Defendants' failure to comply with the requirements of due process has resulted in substantial detriment to the Plaintiffs and the Room and Board Class.

## FOR A TWELFTH COLLECTIVE CAUSE OF ACTION
## (UNJUST ENRICHMENT)

196.    Plaintiffs incorporate by reference paragraphs 1 through 82 as if fully set forth herein.

197.    Plaintiffs bring this count on behalf of the Room and Board Class (including a meal plan), and in the alternative to the breach of contract claim brought on behalf of the other members of the Room and Board Class.

198.    Defendants have received a benefit to which it is not entitled at the expense of Plaintiffs and other members of the Room and Board Class.  Plaintiffs and other members of the Room and Board Class paid for housing (including a meal plan) and did not receive the full benefit of their bargain.

35

199.    Accordingly, Defendants should return the unused monies paid for on-campus housing (including a meal plan) for the Spring 2020 semester by Plaintiffs and other members of the Room and Board Class.  Equity demands the return of the prorated, unused amounts paid by Plaintiffs and other members of the Room and Board Class.

200.    Defendants have been unjustly enriched by retaining the monies paid by Plaintiffs and other members of the Room and Board Class for residence hall housing (including a meal plan) for the semester while not providing the housing (including a meal plan) for which those monies were paid.

201.    Equity and good conscience require that Defendants return to Plaintiffs and the other members of the Room and Board Class a pro-rata portion of the monies paid by Plaintiffs and other members of the Room and Board Class for their housing expenses (including a meal plan).

## FOR A THIRTEENTH COLLECTIVE CAUSE OF ACTION

### (CONVERSION)

202.    Plaintiffs incorporate by reference paragraphs 1 through 82 as if fully set forth herein.

203.    Plaintiffs bring this count on behalf of the Tuition Class.

204.    The two key elements of conversion are (a) Plaintiffs' legal ownership or an immediate superior right of possession to a specific identifiable thing and (b) Defendants' unauthorized dominion over the thing in question or interference with it, to the exclusion of Plaintiffs' right.

205. Plaintiffs and members of the Tuition Class have an identifiable legal ownership to the right and services of an in-person, on-campus educational experience and paid tuition funds for the same.

206. As set forth above, Defendants have not provided those services or access, to the exclusion of Plaintiffs' and other members of the Tuition Class's rights.

207. As set forth above, Plaintiffs have not, to date, received from Defendants a proper reimbursement for tuition paid to Defendants for the Spring 2020 semester.

208. Defendants have received and retained possession of Plaintiffs' and other Tuition Class members' full payments for tuition for the Spring 2020 semester.

209. Defendants' continued possession of the full payments for Spring 2020 semester tuition is adverse and in derogation of Plaintiffs' and other Tuition Class members' entitlement to such funds.

210. Defendants refuse to remit to Plaintiffs and the Tuition Class reimbursement for tuition paid for the Spring 2020 semester.

211. Defendants have therefore converted and continue to convert Plaintiffs' and other Tuition Class members' Spring 2020 semester tuition.

**FOR A FOURTEENTH COLLECTIVE CAUSE OF ACTION**

**(CONVERSION)**

212. Plaintiffs incorporate by reference paragraphs 1 through 82 as if fully set forth herein.

213. Plaintiffs bring this count on behalf of the Fees Class.

214. The two key elements of conversion are (a) Plaintiffs' legal ownership or an immediate superior right of possession to a specific identifiable thing and (b) Defendants'

37

unauthorized dominion over the thing in question or interference with it, to the exclusion of Plaintiffs' right.

215. Plaintiffs, and members of the Fees Class, have an identifiable legal ownership to the right and services of an in-person, on-campus educational experience and paid fees for the same.

216. As set forth above, Defendants have not provided those services or access, to the exclusion of Plaintiffs' and other members of the Fee Class's rights.

217. As set forth above, Plaintiffs and other Fees Class members have not, to date, received from Defendants a proper reimbursement for fees paid to Defendants for the Spring 2020 semester.

218. Defendants have received and retained possession of Plaintiffs' and other Fees Class members' payments for fees for the Spring 2020 semester.

219. Defendants' continued possession of the payments for Spring 2020 semester fees is adverse and in derogation of Plaintiffs' and other Fees Class members' entitlement to such funds.

220. Defendants refuse to remit to Plaintiffs and other Fees Class members reimbursement for some fees paid for the Spring 2020 semester.

221. Defendants have therefore converted and continue to convert Plaintiffs' and other Fees Class members' Spring 2020 semester fees.

## FOR A FIFTEENTH COLLECTIVE CAUSE OF ACTION

## (CONVERSION)

222. Plaintiffs incorporate by reference paragraphs 1 through 82 as if fully set forth herein.

223.    Plaintiffs bring this count on behalf of the Room and Board Class (including a meal plan).

224.    The two key elements of conversion are (a) Plaintiffs' and the Room and Board Class members' legal ownership or an immediate superior right of possession to a specific identifiable thing and (b) Defendants' unauthorized dominion over the thing in question or interference with it, to the exclusion of Room and Board Class members' right.

225.    Plaintiffs and the Room and Board Class has an identifiable legal ownership to the right and services of Room and Board (including a meal plan) supporting an in-person, on-campus educational experience and paid fees for the same.

226.    As set forth above, Defendants have not provided those services or access, to the exclusion of Plaintiffs and other members of the Room and Board Class's rights.

227.    As set forth above, Plaintiffs and members of the Room and Board Class have not, to date, received from Defendants a proper reimbursement for fees paid to Defendants for the Spring 2020 semester.

228.    Defendants have received and retained possession of Plaintiffs and the Room and Board Class' payments for those fees for the Spring 2020 semester.

229.    Defendants' continued possession of the payments for Spring 2020 semester fees is adverse and in derogation of the Room and Board Class' entitlement to such funds.

230.    Defendants refuse to remit to Plaintiffs and the Room and Board Class proper reimbursement for Room and Board (including a meal plan) fees paid for the Spring 2020 semester.

231.    Defendants have therefore converted and continue to convert the Room and Board Class' Spring 2020 semester payments.

## FOR A SIXTEENTH COLLECTIVE CAUSE OF ACTION

## (VIOLATION OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT, 815 ILCS 505/1 *et seq.*)

232.    Plaintiffs incorporate by reference paragraphs 1 through 82 as if fully set forth herein.

233.    Plaintiffs bring this Count individually and on behalf of the members of the Tuition Class, the Fees Class, and the Room and Board Class or, in the alternative, the Illinois Tuition Class, the Illinois Fees Class, and the Illinois Room and Board Class.

234.    This cause of action is brought pursuant to the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.* ("ICFA").  The express purpose of the ICFA is to "protect consumers" "against fraud, unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce . . . ." 815 ILCS 505/1.

235.    Plaintiffs and members of the Classes are "consumers" within the meaning of 815 ILCS 505/1(e) or otherwise sufficiently implicate consumer protection concerns under the ICFA

236.    Defendant was engaged in "trade or commerce" as defined by 815 ILCS 505/1(f).

237.    815 ILCS 505/2 declares unlawful "unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omissions of such material fact . . . in the conduct of any trade or commerce."

238.    815 ILCS 505/2 also states that "consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5 (a) of the Federal Trade Commission Act."  Defendant's unfair and deceptive practices are likely to mislead – and

40

have mislead – the consumer acting reasonably in the circumstances and violate 815 ILCS 505/2 and 21 U.S.C. § 352.

239. Defendant has violated the ICFA by engaging in **both** unfair **and** deceptive practices as described herein which offend public policies and are immoral, unethical, unscrupulous, and substantially injurious to consumers.

240. Defendant's failure to provide adequate refunds of tuition, room and board, and fees paid to cover the cost of on-campus services that were no longer provided to students, and its actions depriving members of the Classes of the use of services for which they already paid without adequate compensation, as detailed fully in the paragraphs above, constitute unfair practices under the ICFA. .

241. Plaintiffs and members of the Classes have been aggrieved by Defendant's unfair and deceptive practices in that they purchased Defendants' educational services, which they would not have purchased or would not have paid as much for had they known the true facts.

242. The damages suffered by Plaintiffs and members of the Class were directly and proximately caused by the deceptive, misleading, and/or unfair practices of Defendant, as more fully described herein.

243. Plaintiffs' actions were akin to consumer actions insofar as Plaintiffs saw Defendant's advertisements and accepted Defendant's representations regarding the on-campus experience, instructional, and housing services, as detailed above, as truthful and accurate, and it influenced their decisions to attend Defendants' institution.

244. Defendants' representations involved consumer protection concerns because Defendants made these representations specifically for the purposes of inducing enrollment and/or

appearing to be a more desirable educational institution. Further, Defendants' representations were specifically used for marketing purposes and to increase its enrollment and profits.

245. Plaintiffs' requested relief would serve the public interest by protecting the members of the Classes and future prospective students from Defendants' conduct by enjoining Defendants from their deceptive and/or unfair marketing practices and by discouraging other educational institutions from making such false and misleading representations.

246. Pursuant to 815 ILCS 505/10a, Plaintiffs and the Illinois Class seek a court order enjoining the above-described wrongful acts and practices of Defendants and for restitution and disgorgement.

247. Additionally, pursuant to 815 ILCS 505/10a, Plaintiffs and the Illinois Class make claims for economic damages, punitive damages, and attorneys' fees and costs.

248. As required by 815 ILCS 505/10a(d), notice of this action will be mailed to the Illinois Attorney General upon filing.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually and on behalf of members of the Classes, pray for judgment in their favor and against Defendants as follows:

A. Certifying the Classes as proposed herein, designating Plaintiffs as Class representatives, and appointing undersigned counsel as Class Counsel;

B. Declaring that Defendants are financially responsible for notifying the Class members of the pendency of this action;

C. Declaring that Defendants have wrongfully kept monies paid for tuition and fees;

D. Requiring that Defendants disgorge amounts wrongfully obtained for tuition and fees and/or compelling Defendants to make restitution to Plaintiffs and members of the Classes;

E.     Awarding injunctive relief as permitted by law or equity, including enjoining Defendants from retaining the pro-rated, unused monies paid for tuition and fees;

F.     Awarding Plaintiffs' reasonable attorney's fees, costs, and expenses, as permitted by law;

G.     Awarding pre and post judgment interest on any amounts awarded, as permitted by law; and

H.     Awarding such other and further relief as may be just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiffs demand a trial by jury on all issues so triable.

Dated: August 28, 2020

**CARLSON LYNCH LLP**


By:  */s/ Kyle A. Shamberg*
       Kyle A. Shamberg
Katrina Carroll
111 W. Washington Street, Suite 1240
Chicago, IL 60602
Telephone: (312) 750-1265
Email: kshamberg@carlsonlynch.com
Email: kcarroll@carlsonlynch.com

**CARLSON LYNCH LLP**
Edward Ciolko
Nicholas Colella
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
Tel: (412) 322-9243
Fax: (412) 231-0246
Email: eciolko@carlsonlynch.com
Email: ncolella@carlsonlynch.com

**GAINEY McKENNA & EGLESTON**
Thomas J. McKenna
Gregory M. Egleston
Robert J. Schupler
501 Fifth Avenue, 19th Floor

New York, NY 10017
Tel.: (212) 983-1300
Fax: (212) 983-0381
Email: tjmckenna@gme-law.com
Email: gegleston@gme-law.com
Email: rschupler@gme-law.com

***Attorneys for Plaintiffs***